HENNEMAN, APPELLEE, *v.* CITY OF TOLEDO ET AL., APPELLANTS.

[Cite as Henneman *v.* Toledo (1988), 35 Ohio St. 3d 241.]

(No. 87-335—Decided March 9, 1988.)

242

*R. Michael Frank* and *Charles Stupsker,* for appellee.

*Sheldon M. Rosen,* director of law, and *Geoffrey H. Davis,* for appellants.

*Gallon, Kalniz & Iorio Co., L.P.A., Ted Iorio* and *Christine A. Reardon,* urging reversal for *amicus curiae,* Toledo Police Patrolmen's Assn.

DOUGLAS, J. The principal question posed by this appeal is whether information and records compiled by a police department pursuant to its internal investigation of alleged police misconduct are subject to an executive privilege, either qualified or absolute, protecting such information and records from the normal discovery requirements of civil litigation. We hold that such evidence must be disclosed upon a proper discovery request if, pursuant to an *in camera* inspection, the trial judge determines that the public interest in the confidentiality of such information is outweighed by the litigant's specific need for the evidence.

Where a particular claim is based on the United States Constitution or federal statutes, federal law controls on the question of evidentiary privilege. *Kerr* v. *U.S. Dist. Court for Northern Dist. of Cal.* (C.A. 9, 1975), 511 F. 2d 192, 197. Conversely, where the relief sought relies upon Ohio law, the most appropriate source of applicable legal principles would be the law of privilege as it exists in this state. See Evid. R. 501. Since appellee's complaint contains both federal and state claims, we must look to both sources of authority, so that the relevant law may be applied to each claim.

The federal cases are clear. The rule of absolute privilege for internal affairs information adopted in *Kott* v. *Perini* (N.D. Ohio 1968), 283 F. Supp. 1, upon which the trial court apparently relied, has been rejected overwhelmingly in subsequent decisions.[1] The leading case appears to be *Frankenhauser* v. *Rizzo* (E.D. Pa. 1973), 59 F.R.D. 339. In *Frankenhauser,* the plaintiffs brought a civil rights action alleging police misconduct in the death of a man shot by police officers. The question before the *Frankenhauser* court was whether the plaintiffs had

---

[1] See, *e.g., Diamond* v. *Mobile* (S.D. Ala. 1978), 86 F.R.D. 324; *Crawford* v. *Dominic* (E.D. Pa. 1979), 469 F. Supp. 260; *Sirmans* v. *South Miami* (S.D. Fla. 1980), 86 F.R.D. 492; *Mercy* v. *Suffolk* (E.D. N.Y. 1982), 93 F.R.D. 520; *Elliott* v. *Webb* (D. Idaho 1983), 98 F.R.D. 293; *Spell* v. *McDaniel* (E.D. N.C. 1984), 591 F. Supp. 1090; *Tyner* v. *Jackson* (S.D. Miss. 1985), 105 F.R.D. 564; *Urseth* v. *Dayton* (S.D. Ohio 1986), 110 F.R.D. 245, 252.

the right to seek discovery of relevant police investigative records, including internal reports of statements made by members of the defendant police department regarding the incident. The court rejected the defendants' claim of executive privilege, ruling that the documents requested are not absolutely protected from disclosure under these circumstances. In so holding, the *Frankenhauser* court discounted defendants' argument that compelled disclosure of such information will have a chilling effect on the department's ability to pursue its investigations and will impede candid evaluation of the conduct of its members. *Id.* at 342. The court reasoned that such a view fails to allow for the willingness of the police and of the public in general to cooperate fully with law enforcement officials. *Id.* at 344. However, the court recognized that the confidentiality of such information often serves a legitimate public interest, particularly in an ongoing criminal investigation:

"* * * [W]hen executive privilege is asserted, the court must balance the public interest in the confidentiality of governmental information against the needs of a litigant to obtain data, not otherwise available to him, with which to pursue a non-frivolous cause of action. Needless to say, the balancing task will often be difficult and the ingredients of the test will vary from case to case. In the context of discovery of police investigation files in a civil rights case, however, at least the following considerations should be examined: (1) the extent to which disclosure will thwart governmental processes by discouraging citizens from giving the government information; (2) the impact upon persons who have given information of having their identities disclosed; (3) the degree to which governmental self-evaluation and consequent program improvement will be chilled by disclosure; (4) whether the information sought is factual data or evaluative summary; (5) whether the party seeking the discovery is an actual or potential defendant in any criminal proceeding either pending or reasonably likely to follow from the incident in question; (6) whether the police investigation has been completed; (7) whether any intradepartmental disciplinary proceedings have arisen or may arise from the investigation; (8) whether the plaintiff's suit is non-frivolous and brought in good faith; (9) whether the information sought is available through other discovery or from other sources; and (10) the importance of the information sought to the plaintiff's case." *Id.* at 344.

*In camera* inspection of the documents by the trial judge is the most appropriate method of dealing with claims of executive privilege. *Kerr* v. *U.S. Dist. Court for Northern Dist. of Cal.* (1976), 426 U.S. 394, 406. By conducting such an inspection in chambers away from the jury and without the presence or participation of counsel for either party, the trial judge may make the necessary determination without compromising the confidentiality of any information he finds to be privileged. Upon such inspection in light of the factors outlined in *Frankenhauser,* and any other factors deemed relevant by the court, information found to be discoverable may then be disclosed to the requesting party on the condition that access to the materials be limited to the requesting party's counsel and persons employed by counsel in connection with the case. *Urseth* v. *Dayton* (S.D. Ohio 1986), 110 F.R.D. 245, 257. Any records requested by the plaintiff which the trial judge deems to be nondiscoverable under the *Frankenhauser* test will then be sealed and made part

of the record, so that an appellate court faced with the question may determine whether the trial court abused its discretion in withholding such records.

The *Frankenhauser* rule of qualified privilege for internal affairs records and files has been adopted by the vast majority of those federal courts presented with the question.[2] Thus, with regard to appellee's federal claims, the trial court erred in applying an absolute privilege to such information, barring appellee from access thereto without considering the balancing factors outlined in *Frankenhauser*.

We turn now to a consideration of whether the law of Ohio recognizes an absolute privilege with regard to records and information compiled in the course of an internal affairs investigation by a police department. Appellants argue that such records are absolutely protected from disclosure by R.C. 149.43, Ohio's public records statute, and by R.C. Chapter 1347, Ohio's Privacy Act. We cannot agree.

R.C. 149.43(B) requires that "[a]ll public records shall be promptly prepared and made available for inspection to any member of the general public at all reasonable times during regular business hours. * * *" R.C. 149.43 (A) defines the term "public record" and specifically exempts confidential law enforcement investigatory records from the disclosure requirement. The term "confidential law enforcement investigatory record" is defined in R.C. 149.43(A)(2) as follows:

" 'Confidential law enforcement investigatory record' means any record that pertains to a law enforcement matter of a criminal, quasi-criminal, civil, or administrative nature, but only to the extent that the

release of the record would create a high probability of disclosure of any of the following:

"(a) The identity of a suspect who has not been charged with the offense to which the record pertains, or of an information source or witness to whom confidentiality has been reasonably promised;

"(b) Information provided by an information source or witness to whom confidentiality has been reasonably promised, which information would reasonably tend to disclose his identity;

"(c) Specific confidential investigatory techniques or procedures or specific investigatory work product;

"(d) Information that would endanger the life or physical safety of law enforcement personnel, a crime victim, a witness, or a confidential information source."

In arguing that internal affairs investigatory files are shielded from disclosure in this case by the foregoing provisions, appellants rely heavily on cases from this court holding that law enforcement investigation records are exempt from the public disclosure requirements of R.C. 149.43. *E.g., Wooster Republican Printing Co.* v. *Wooster* (1978), 56 Ohio St. 2d 126, 10 O.O. 3d 312, 383 N.E. 2d 124, paragraph four of the syllabus; *State, ex rel. Dayton Newspapers, Inc.,* v. *Rauch* (1984), 12 Ohio St. 3d 100, 12 OBR 87, 465 N.E. 2d 458. Appellants' reliance is misplaced. These cases stand for the proposition that the law enforcement records described in R.C. 149.43(A)(2) are not subject to the requirement of R.C. 149.43(B) that all public records must be made available to the general public upon request at any reasonable time. Appellee herein is not contending that the records she requests must be made available to her as a member of the general public. R.C. 149.43 (A)(2) only operates to exempt the records described therein from the require-

---

[2] See cases cited in fn. 1, *supra.*

ment of availability to the general public on request. It does not protect records from a proper discovery request in the course of litigation, if such records are otherwise discoverable. Thus, R.C. 149.43 is not dispositive.

Appellants next argue that the information appellee requests is protected from disclosure by the provisions of R.C. Chapter 1347, and specifically R.C. 1347.08.[3] Again, appellants have misapprehended the scope of the statute. "A basic purpose of * * * [R.C. Chapter 1347] is to protect the individual's rights to privacy *with regard to public record keeping.* Amended Substitute Senate Bill No. 99 of the 111th General Assembly, codified as R.C. Chapter 1347, states in its preamble that its objective is to 'regulate the use of personal information *by state and local governments* * * * and to protect the privacy of individuals *from excessive record keeping by government.'* " (Emphasis added.) *Wooster Republican Printing Co., supra,* at 133, 10 O.O. 3d at 316, 383 N.E. 2d at 128. We do not believe that R.C. Chapter 1347 was intended to shield the personal information de-

scribed therein from a legitimate discovery request when such information is otherwise discoverable.

We find no Ohio authority for the proposition that police internal investigation records are entitled to an absolute privilege such that any and all requests for discovery of such records in the course of litigation may properly be refused. Nor do we consider such a blanket rule desirable. However, we recognize that the public has an important interest in the confidentiality of information compiled in the course of police internal investigations. In many instances, disclosure of such information may work to undermine investigatory processes by discouraging persons with knowledge from coming forward or by revealing the identities of confidential sources. There may very well be an overriding need in particular cases for protecting the identities of members of the police force or of the general public who come forward with information about alleged police abuses. Appellants assert that the confidentiality of internal affairs reports is necessary to protect the privacy of police officers.[4] Another equally im-

---

[3] The pertinent portions of R.C. 1347.08 provide:

"(A) Every state or local agency that maintains a personal information system, upon the request and the proper identification of any person who is the subject of personal information in the system, shall:

"(1) Inform the person of the existence of any personal information in the system of which he is the subject;

"(2) Except as provided in divisions (C) and (E)(2) of this section, permit the person, his legal guardian, or an attorney who presents a signed written authorization made by the person, to inspect all personal information in the system of which he is the subject;

"(3) Inform the person about the types of uses made of the personal information,

including the identity of any users usually granted access to the system.

"* * *

"[(E)](2) This section does not provide a person who is the subject of personal information maintained in a personal information system, his legal guardian, or an attorney authorized by the person, with a right to inspect or have copied, or require an agency that maintains a personal information system to permit the inspection of or to copy, a confidential law enforcement investigatory record or trial preparation record, as defined in divisions (A)(2) and (4) of section 149.43 of the Revised Code. * * *"

[4] *Amicus curiae,* Toledo Police Patrolmen's Association, asserts in its brief that

portant interest may exist in some cases: the need for concealing the identities of informants or citizens who participate in internal investigations. All these interests support the requirement of an *in camera* inspection of the requested records by the trial judge for the purpose of determining whether confidentiality is paramount.

We hold, therefore, that records and information compiled by an internal affairs division of a police department are subject to discovery in civil litigation arising out of alleged police misconduct if, upon an *in camera* inspection, the trial court determines that the requesting party's need for the material outweighs the public interest in the confidentiality of such information. Of course, the request for such information is still subject to the normal standards of discovery. For example, if the files contain privileged medical records or if the request is vague or burdensome, a properly delineated protective order may be issued upon motion. But we reject the notion that an absolute privilege automatically protects internal investigation reports from a legitimate request for discovery. *Dayton* v. *Turner* (1984), 14 Ohio App. 3d 304, 14 OBR 362, 471 N.E. 2d 162.

Appellants next assert that the court of appeals improperly substituted its judgment for that of the trial court in evaluating the protective orders issued on grounds other than privilege. A great number of appellee's

interrogatories and other requests for discovery were suppressed by the trial court·on the basis that the requests were overly broad, vague, conclusory and/or burdensome. Our review of the record compels the conclusion that the court of appeals acted properly in those instances where it reversed the trial court's determinations. In our view, the trial court was overzealous in its efforts to protect appellants from what it perceived to be inappropriate discovery requests. For example, the first interrogatory propounded by appellee to the city of Toledo requested the "names and addresses of all persons who witnessed or otherwise have knowledge of the facts and circumstances surrounding the arrest of * * * [appellee] on January 12, 1982." The trial court issued a protective order suppressing this interrogatory on the basis that it was "overly burdensome." As noted by the court of appeals, this information is highly relevant and within the knowledge of the party to whom the interrogatory was propounded. We cannot see how the request is overly burdensome, since the answer need include only those persons of whom the city of Toledo has knowledge.

In sum, we are not convinced that the court of appeals merely substituted its judgment for that of the trial court. Instead, the appellate court reviewed the lower court's protective orders under pertinent legal principles in the proper exercise of its appellate authority.

---

members of the police force must respond to questions asked of them in any internal investigation or face disciplinary action, including possible dismissal. It is argued that disclosure of statements made under such circumstances violates the constitutionally guaranteed right against self-incrimination. We note that the existence of such a policy in the department compelling members to respond to questioning under threat of dis-

cipline can have no bearing on the rights of third persons such as appellee. While we express no opinion on whether the department's policy violates the Fifth Amendment to the United States Constitution and its guarantee against self-incrimination, it could be argued that any such department policy or bargaining contract provision would be fraught with constitutional difficulty of immense proportions.

Accordingly, based on the foregoing, the judgment of the court of appeals is hereby affirmed, and the cause is remanded to the trial court for further proceedings consistent with this opinion.

*Judgment affirmed and cause remanded.*

MOYER, C.J., SWEENEY, LOCHER, HOLMES, WRIGHT and H. BROWN, JJ., concur.