**WARD et al., Appellants,**

v.

**SUMMA HEALTH SYSTEM et al., Appellees.**

[Cite as *Ward v. Summa Health Sys.,* 184 Ohio App.3d 254, 2009-Ohio-4859.]

Court of Appeals of Ohio,
Ninth District, Summit County.

No. 24567.

Decided Sept. 16, 2009.

</div>

Lawrence J. Scanlon and Michael J. Elliott, for appellants.

S. Peter Voudouris, Nicole Braden Lewis, and Karen E. Ross; David M. Best; and Douglas G. Leak, for appellees.

---

BELFANCE, Judge.

{¶ 1} Plaintiffs-appellants, Donald and Susan Ward, appeal various rulings of the Summit County Court of Common Pleas. For reasons set forth below, we vacate and remand.

## I

{¶ 2} In May 2006, Donald Ward underwent heart-valve replacement surgery at Akron City Hospital, a Summa Health System hospital. Approximately a month later, Summa became aware that one of its nonemployee health-care workers at Akron City Hospital was exhibiting jaundice. The nonemployee health-care worker subsequently tested positive for the Hepatitis B virus, prompting Summa to engage in a look-back program in order to identify all patients who might have been exposed to the virus. Donald Ward was one of the patients identified by the look-back program; Ward tested positive for Hepatitis B. Ward's wife, Susan, had been previously vaccinated against the virus.

{¶ 3} Donald and Susan Ward filed suit against Summa and a John Doe defendant for personal injury related to his heart surgery. Donald and Susan Ward later dismissed their complaint and refiled it in October 2007 against Summa and John Doe defendants one through six. Through discovery, the Wards sought information detailing the identity of the nonemployee health-care worker who exposed Donald Ward to Hepatitis B, as well as details concerning how the exposure occurred. Summa refused to comply with much of the requested discovery and asserted that four of the requested documents were privileged. Summa provided the Wards with a privilege log that essentially listed the documents and a redacted version of one of the documents. The Wards also sought to depose Dr. Robert Debski, the nonemployee health-care worker who performed Donald Ward's surgery. Dr. Debski refused to answer questions related to his personal medical history and indicated that his deposition testimony would be limited to factual testimony related to Donald Ward's surgery.

{¶ 4} The Wards filed a motion to compel and a motion for a protective order concerning Summa's refusal to provide requested discovery, and Dr. Debski filed a motion for a protective order to limit his deposition testimony to the surgery itself. The trial court denied the Wards' motions and granted Dr. Debski's motion for a protective order. The Wards appealed to this court, and we dismissed for lack of a final, appealable order.

{¶ 5} The trial court then ordered the Wards to file an affidavit of merit pursuant to Civ.R. 10(D)(2). The Wards did not file an affidavit of merit, and Summa moved to dismiss. The trial court granted Summa's motion and dismissed the case without prejudice pursuant to Civ.R. 10(D)(2)(d) and 41(B)(1).

{¶ 6} The Wards have appealed, asserting three assignments of error.

## II

{¶ 7} As an initial matter, this court must determine whether the order from which the Wards appeal is a final, appealable order. The Ohio Constitution limits this court's appellate jurisdiction to the review of final judgments or orders of lower courts. Section 3(B)(2), Article IV, Ohio Constitution. "An order is a final order that may be reviewed, affirmed, modified, or reversed, with or without retrial, when it is * * * [a]n order that affects a substantial right in an action that in effect determines the action and prevents a judgment." R.C. 2505.02(B)(1). Generally "[a] dismissal without prejudice is not a final, appealable order." *State ex rel. Automation Tool & Die, Inc. v. Kimbler* (Apr. 4, 2001), 9th Dist. No. 3124–M, 2001 WL 363292, at *2, citing *Denham v. New Carlisle* (1999), 86 Ohio St.3d 594, 597, 716 N.E.2d 184. Nonetheless, there are situations in which a dismissal without prejudice can constitute a final and appealable order. See *Natl. City Commercial Capital Corp. v. AAAA At Your Serv., Inc.*, 114 Ohio

St.3d 82, 2007-Ohio-2942, 868 N.E.2d 663, at ¶ 1, 11; *Lippus v. Lippus*, 6th Dist. No. E–07–003, 2007-Ohio-6886, 2007 WL 4464953, at ¶ 11–12; *MBNA Am. Bank, N.A. v. Harper*, 1st Dist. No. C–060937, 2007-Ohio-5130, 2007 WL 2812906, at ¶ 1–3, 13; *MBNA Am. Bank, N.A. v. Canfora*, 9th Dist. No. 23588, 2007-Ohio-4137, 2007 WL 2318095, at ¶ 6; *White v. Lima Mem. Hosp.* (Dec. 7, 1987), 3d Dist. No. 1–86–62, 1987 WL 27140, at *1–2.

{¶ 8} The Wards have persuaded this court that the facts of this case warrant the conclusion that the trial court's dismissal without prejudice affects a substantial right and in effect determines the action and prevents a judgment. R.C. 2505.02(B)(1). Civ.R. 10(D)(2)(a) requires that complaints containing medical claims include at least one affidavit of merit "relative to each defendant named in the complaint for whom expert testimony is necessary to establish liability." The affidavit of merit must be provided by an expert and, inter alia, must include a statement by the expert that one of the defendants breached the standard of care, causing injury to the plaintiff. Id. In this case, the trial court dismissed the Wards' case for failure to submit an affidavit of merit as required by the rule. The Wards claim that they have failed to file the affidavit because the trial court's previous denial of their motion to compel their requested discovery leaves their experts unable to complete the necessary affidavit. In support of the Wards' claim, they attached an affidavit of their counsel to their brief in opposition to Summa's motion to dismiss. The affidavit states that experts reviewed the matter but could not determine whether the standard of care was breached due to the experts' inability to review the documents subject to the motion to compel. The Wards argue that while they technically could refile their case, ultimately, it will end in the same manner, as they will be unable to provide an affidavit of merit. We conclude that because the Wards arguably cannot produce an affidavit of merit without our review of their denied discovery requests, the trial court's dismissal effectively prevented a judgment in favor of the Wards, and the order from which the Wards appeal is therefore final and appealable.

{¶ 9} The Wards have presented this court with three assignments of error, which will be analyzed out of order to aid our review.

### III

{¶ 10} The Wards' third assignment of error alleges, "The Trial Court abused its discretion in denying Appellants' Motion to Compel and Motion for Protective Order."

{¶ 11} Although, generally, discovery orders are reviewed under an abuse-of-discretion standard, the Supreme Court of Ohio has concluded that the issue of whether the information sought is confidential and privileged from

disclosure is a question of law that should be reviewed de novo. *Med. Mut. of Ohio v. Schlotterer,* 122 Ohio St.3d 181, 2009-Ohio-2496, 909 N.E.2d 1237, at ¶ 13; see also *Roe v. Planned Parenthood Southwest Ohio Region,* 122 Ohio St.3d 399, 2009-Ohio-2973, 912 N.E.2d 61, at ¶ 29. As the Wards' second and third assignments of error raise the issue of whether the information sought is confidential and privileged from disclosure, we will conduct a de novo review. Id. The Wards' motion to compel requested that the trial court compel answers to interrogatories, as well as the documents listed in Summa's privilege log. The documents listed on the privilege log are two unusual-occurrence reports, the minutes from the meeting of the Summit County Health District, and the Epidemiological Linked Hepatitis B Case Investigation Final Report (which was produced in a redacted form). The trial court did not conduct an in camera review of the documents, but nevertheless concluded that based on the evidence presented by Summa, the documents were privileged under R.C. 2305.24.

{¶ 12} Initially, we note that privileges are to be strictly construed and that "[t]he party claiming the privilege has the burden of proving that the privilege applies to the requested information." *Giusti v. Akron Gen. Med. Ctr.,* 178 Ohio App.3d 53, 2008-Ohio-4333, 896 N.E.2d 769, at ¶ 17. R.C. 2305.24 provides:

> Any information, data, reports, or records *made available to* a *quality assurance committee or utilization committee* of a hospital * * * are confidential and shall be used by the committee and the committee members only in the exercise of the proper functions of the committee.

(Emphasis added.)

{¶ 13} In support of Summa's assertion of privilege concerning the unusual-occurrence reports, Summa attached the affidavit of its Director of Infection Control and Clinical Safety. The director stated that the unusual-occurrence reports were "prepared through a process and format specifically designed to follow the hospital incident report confidentiality provisions in Ohio law, namely Sections 2305.24, 2305.251, 2305.253, 2305.28, and 2317.02(A) of the Revised Code * * *." The affidavit contains the further contention that the unusual-occurrence reports were prepared with an expectation that they would be confidential and also asserts that the reports contain attorney-client communications.

{¶ 14} Based on the evidence before the trial court and the fact that the trial court declined to conduct an in camera review of the documents, we are unable to conclude that Summa sufficiently established that the unusual-occurrence reports were actually privileged by R.C. 2305.24. While the trial court indicated in its order that the Wards did not challenge the affidavit, it was Summa's burden to demonstrate that the privilege applied, not the Wards'. See *Giusti,* 178 Ohio

App.3d 53, 2008-Ohio-4333, 896 N.E.2d 769, at ¶ 17. Nowhere in the director's affidavit does it state that the reports at issue were made available to any committee, that such a committee existed within the hospital, that any committee actually met to discuss the incident or the reports, or that the reports were prepared by or for the use of a peer-review committee. While we note that the director was also deposed, that transcript was not provided to this court. Nonetheless, Summa does not rely on the transcript in support of its assertion of privilege and in fact states in its brief in opposition to the Wards' motion to compel that the director was not questioned about the documents by the Wards during the deposition.

{¶ 15} The Supreme Court of Ohio has stated that "a reviewing court is not authorized to reverse a correct judgment merely because erroneous reasons were assigned as a basis thereof." *State ex rel. Carter v. Schotten* (1994), 70 Ohio St.3d 89, 92, 637 N.E.2d 306. Thus, we must examine the other privileges that Summa claims apply to the unusual-occurrence reports and determine whether Summa has presented sufficient evidence in support. Specifically, Summa argues in its brief that R.C. 2305.251, 2305.252, 2305.253, 2305.28, and 2317.02(a), all · protect the documents from discovery. However, again, we determine that Summa has not provided the trial court with sufficient evidence to conclude that the documents are privileged under any of the statutes, absent an in camera review.

{¶ 16} Initially we note that R.C. 2305.28 and 2305.251 grant immunity from liability and are not statutes conferring a privilege, and so we cannot see how such a statute would apply to these documents. Both R.C. 2305.252 and 2305.253 directly or indirectly relate to peer review. R.C. 2305.252 provides for the confidentiality of peer-review proceedings, and 2305.253 provides for the confidentiality of incident or risk-management reports. An incident or risk-management report is "a report of an incident involving injury or potential injury to a patient as a result of patient care provided by health care providers, including both individuals who provide health care and entities that provide health care, *that is prepared by or for the use of a peer review committee* of a health care entity and is within the scope of the functions of that committee." (Emphasis added.) R.C. 2305.25(D).

{¶ 17} We have stated when examining R.C. 2305.252 that "[a] party claiming the peer-review privilege, at 'a bare minimum,' must show that a peer-review committee existed and that it actually investigated the incident." *Giusti*, 178 Ohio App.3d 53, 2008-Ohio-4333, 896 N.E.2d 769, at ¶ 17, quoting *Smith v. Manor Care of Canton, Inc.*, 5th Dist. Nos. 2005–CA–00100, 2005–CA–00160, 2005–CA–00162, and 2005–CA–00174, 2006-Ohio-1182, 2006 WL 636975, at ¶ 61. Thus, we determine that based on the evidence before it and given the lack of an in camera

inspection of the documents, the trial court could not conclude as a matter of law that the two unusual-incident reports were privileged under either R.C. 2305.252 or 2305.253.

{¶ 18} Likewise, we are not convinced that Summa has produced evidence demonstrating that the documents are privileged under the attorney-client privilege. R.C. 2317.02(A)(1) provides that the testimony of an attorney is privileged "concerning a communication made to the attorney by a client in that relation or the attorney's advice to a client, except that the attorney may testify by express consent of the client." The Supreme Court of Ohio has held that " 'the burden of showing that testimony [or documents] sought to be excluded under the doctrine of privileged attorney-client communications rests upon the party seeking to exclude [them] * * *.' " *Peyko v. Frederick* (1986), 25 Ohio St.3d 164, 166, 25 OBR 207, 495 N.E.2d 918, quoting *Waldmann v. Waldmann* (1976), 48 Ohio St.2d 176, 178, 2 O.O.3d 373, 358 N.E.2d 521. The only reference to attorney-client privilege in the director's affidavit states, "Unusual occurrence reports such as those listed on Defendant Summa Health System's Privilege Log dated January 21, 2008, contain confidential attorney-client communications directed by Summa personnel to Summa's attorneys." We determine such a blanket assertion to be insufficient to substantiate the existence of the attorney-client privilege as it relates to the two reports.

{¶ 19} Thus, the Wards' argument has merit, and the trial court erred in concluding that the unusual-occurrence reports were privileged based upon the evidence provided by Summa and the subsequent lack of an in camera review of the documents.

{¶ 20} The Wards also argue that the trial court erred in failing to consider applicable "Privacy Rules" in conjunction with the trial court's determination that the documents were privileged under R.C. 2305.24.[1] However, as we have determined that Summa did not present sufficient evidence to the trial court to conclude that the documents were privileged even under R.C. 2305.24, we need not address this issue.

{¶ 21} With respect to the remaining items of discovery that the Wards sought to compel, i.e., the answers to interrogatories as well as the other items in the privilege log, we note that it does not appear that the trial court specifically determined whether these items were in fact privileged, and therefore, not

---

1. We note that in *Grove v. Northeast Ohio Nephrology Assoc., Inc.*, 164 Ohio App.3d 829, 2005-Ohio-6914, 844 N.E.2d 400, at ¶ 23, we determined that the Health Insurance Portability and Accountability Act ("HIPAA") did not preempt the physician-patient privilege under R.C. 2317.02. However, we did not address in that case whether HIPAA preempted R.C. 2305.24, and as that issue is not yet squarely before us, we leave that determination for another day.

subject to discovery. We have stated that "if a trial court fails to rule on a pending motion prior to entering judgment, it will be presumed on appeal that the motion in question was implicitly denied." *George Ford Constr., Inc. v. Hissong,* 9th Dist. No. 22756, 2006-Ohio-919, 2006 WL 475293, at ¶ 12. Thus, we conclude that the trial court implicitly denied the Wards' motion to compel concerning the discovery that the trial court did not address. However, as the trial court offered no law or analysis pertaining to this discovery, we are unable to determine on what basis the trial court found the discovery to be privileged. Moreover, with respect to the remaining two documents identified in the privilege log, it would appear from the record before us that Summa has completely failed to provide the court with any evidence supporting a determination that those two documents are privileged; Summa's sole item of evidence is the affidavit of the director, which does not even mention these two documents. It is also unclear to this court why the trial court did not analyze the propriety of compelling answers to the interrogatories when it appears that many of them are not objectionable.[2] The analysis that the trial court did provide related only to the two unusual-occurrence reports and Dr. Debski's protective order, which we analyze below, and offers no insight into the basis for finding the other items of discovery privileged. Therefore, upon remand, the trial court should revisit this issue in order to evaluate whether in fact any of the documents or interrogatories are privileged.

## IV

{¶ 22} The Wards argue in their second assignment of error that the trial court erred in granting Dr. Debski, a nonparty, a protective order. More specifically, the basic argument that the Wards make in their brief is that the trial court erred in finding that the physician-patient privilege applied to bar Dr. Debski's testimony as it relates to his personal medical-health history. The Wards subpoenaed Dr. Debski, Donald Ward's surgeon, to testify at a deposition. Dr. Debski indicated prior to the deposition that he would not testify about any matters pertaining to his personal medical history and would seek a protective order if the Wards insisted on asking such questions. Subsequently, Dr. Debski moved for a protective order. In the Wards' brief in opposition to Dr. Debski's

---

2. For example, interrogatory No. 13 asked: "Does Defendant, Summa Health System, have a protocol for individuals who work as an agent and/or employee of the hospital or an individual who works within the hospital but is not otherwise an employee of the hospital (e.g., doctor) and who is knowingly exposed to Hepatitis B, if so, describe in detail the protocol and if a written protocol attach as part of your response a copy of the protocol procedure in effect in May 2006." Likewise, interrogatory No. 14 states: "Please describe screening procedures, for employees of and doctors practicing at Summa Health Systems facilities, for viral infections such as Hepatitis B, including the timing and frequency of any periodic testing in effect for May 2006."

motion, the Wards stated that they sought to ask Dr. Debski the following questions: "(1) has he ever had Hepatitis B, (2) if so, when did he contract the disease, and (3) the nature and circumstances of when he first became aware that he had the disease." Dr. Debski has argued that such information is privileged pursuant to R.C. 2317.02(B)(1), the physician-patient privilege.

{¶ 23} Initially we note that the physician-patient privilege did not exist at common law. *State Med. Bd. of Ohio v. Miller* (1989), 44 Ohio St.3d 136, 140, 541 N.E.2d 602. Thus, "because the privilege is in derogation of the common law, it must be strictly construed against the party seeking to assert it." Id.

{¶ 24} R.C. 2317.02(B)(1) provides:

*The following persons shall not testify* in certain respects:

* * *

*A physician or a dentist* concerning a communication made to the physician or dentist by a patient in that relation or the physician's or dentist's advice to a patient, except as otherwise provided in this division, division (B)(2), and division (B)(3) of this section, and except that, if the patient is deemed by section 2151.421 of the Revised Code to have waived any testimonial privilege under this division, the physician may be compelled to testify on the same subject.

(Emphasis added.) Under the statute, a communication is defined as "acquiring, recording, or transmitting any information, in any manner, concerning any facts, opinions, or statements necessary to enable a physician or dentist to diagnose, treat, prescribe, or act for a patient. A 'communication' may include, but is not limited to, any medical or dental, office, or hospital communication such as a record, chart, letter, memorandum, laboratory test and results, x-ray, photograph, financial statement, diagnosis, or prognosis." R.C. 2317.02(B)(5)(a).

{¶ 25} While Dr. Debski is a physician, the testimony being sought concerns his role as a patient: the Wards do not wish to ask Dr. Debski about his patients or their record; the Wards want to ask Dr. Debski about himself. Nothing in the plain language of the statute prohibits this inquiry. The statute does not prevent patients from testifying. Also, while the Wards seek what clearly could be classified as a "communication" under the statute, they do not seek it from the protected person, the physician; they seek it from an unprotected source, the patient.

{¶ 26} Nonetheless, we are not oblivious to the conflict presented by the above conclusion: on the one hand, the statute prevents the physician from testifying about physician-patient communications absent a waiver, but yet at the same time, it does not by its very terms specifically prevent the patient from being compelled to disclose the same information. At first glance, it might seem that

such a pronouncement would obliterate the privilege entirely. However, we do not believe that is the case. Compelling the patient to testify concerning the patient's medical condition or communications made to or by the patient's physician could only possibly require the patient to disclose information within the patient's knowledge. Information unknown by the patient and only known by the patient's doctor or contained only in the patient's medical record could not, and would not, be disclosed and clearly would fall within the privilege. As medicine is a highly technical field involving a complicated and often confusing vocabulary, the information unknown by the patient could be voluminous.

{¶ 27} Further, while the patient holds the privilege, see *Grove,* 164 Ohio App.3d 829, 2005-Ohio-6914, 844 N.E.2d 400, at ¶ 12, the patient can exercise the privilege only to the extent authorized by law. With respect to the physician-patient privilege, the statute grants the patient the right to prevent the physician from testifying concerning his or her communications with the patient, absent an exception, but does not give the patient the right to refuse to testify.

{¶ 28} Nor do we find persuasive the reasoning in *Ingram v. Adena Health Sys.,* 149 Ohio App.3d 447, 2002-Ohio-4878, 777 N.E.2d 901, applying attorney-client case law to the physician-patient privilege. *Ingram* concludes that attorney-client case law is applicable to the physician-patient privilege due to the presence of the privileges in the same section of the Ohio Revised Code. Id. at ¶ 14. However, the two privileges have entirely different histories, as the attorney-client privilege existed both at common law and under statute, see *Gallimore v. Children's Hosp. Med. Ctr.* (Feb. 26, 1992), 1st Dist. Nos. C–890808 and C–890824, 1992 WL 37742, at *6, but the physician-patient privilege never existed at common law. See *Miller,* 44 Ohio St.3d at 140, 541 N.E.2d 602. And while it is clear that under the attorney-client privilege, the client cannot be compelled to testify as to attorney-client communications, the client's protection from testifying arose from the common law, not from the statute. See *Ex parte Martin* (1943), 141 Ohio St. 87, 25 O.O. 225, 47 N.E.2d 388, paragraph six of the syllabus; R.C. 2317.02(A)(1). Thus, as the physician-patient privilege has no common-law roots to protect the patient's testimony, *Miller,* 44 Ohio St.3d at 140, 541 N.E.2d 602, and the statute does not extend the privilege to prevent the patient's testimony from being compelled, it is not reasonable to conclude that the physician-patient privilege is as broad as the attorney-client privilege.

{¶ 29} In light of the above, and our duty to strictly construe the statute against Dr. Debski, id., we conclude that the testimony sought by the Wards is not privileged under R.C. 2317.02(B)(1), as the statute does not prevent a patient from being compelled to testify about doctor-patient communications.

{¶ 30} However, this does not prevent the trial court from issuing a protective order where appropriate. The Supreme Court of Ohio has stated that "Civ.R. 26(C) still applies to discovery that is excepted from privilege protection. Trial courts may use protective orders to prevent confidential information * * * from being unnecessarily revealed. Whether a protective order is necessary remains a determination within the sound discretion of the trial court." *Schlotterer,* 122 Ohio St.3d 181, 2009-Ohio-2496, 909 N.E.2d 1237, at ¶ 23. However, in this case, the trial court issued a protective order barring nearly all testimony by Dr. Debski because it found that the physician-patient privilege applied. As we have determined that the privilege does not prevent the Wards from compelling Dr. Debski's testimony, the protective order granted by the trial court is clearly too broad. However, given the confidential nature of the information the Wards seek, it would be within reason for the trial court to issue a protective order to prevent the unnecessary disclosure of medical information; for example, the trial court could seal Dr. Debski's deposition testimony. Accordingly, we conclude that the Wards' second assignment of error has merit.

## V

{¶ 31} Finally, we examine the Wards' first assignment of error, which alleges that the trial court erred in dismissing their complaint pursuant to Civ.R. 10(D)(2)(d) and 41(B)(1). We agree.

{¶ 32} Essentially, the trial court dismissed the Wards' case because the Wards failed to file an affidavit of merit as required under Civ.R. 10(D)(2)(d). However, the Wards have argued that they were prevented from filing the affidavit because Summa and Dr. Debski improperly withheld necessary discovery from them. Thus, the resolution of the discovery issues is intertwined with the trial court's ultimate dismissal of the Wards' case. As we have sustained the Wards' assignments of error concerning the discovery issues, we thus determine that the trial court erred in dismissing the Wards' case.

{¶ 33} Additionally, we note that the Supreme Court of Ohio has held that "the proper response to the failure to file the affidavit required by Civ.R. 10(D)(2) is a motion to dismiss filed under Civ.R. 12(B)(6)." *Fletcher v. Univ. Hosps. of Cleveland,* 120 Ohio St.3d 167, 2008-Ohio-5379, 897 N.E.2d 147, at ¶ 3. If the motion is granted, the dismissal should be without prejudice. Id. Summa filed its motion to dismiss pursuant to Civ.R. 41(B)(1), and not 12(B)(6). The trial court granted Summa's motion and stated that the Wards "fail[ed] to state a claim under Civ.R. 10(D)(2)(d), and * * * fail[ed to] comply with this Court's order under Civ.R. 41(B)(1)." While Summa's motion was not filed according to the appropriate procedural rule, in light of the trial court's reference to dismissal for failure to state a claim, it is unclear whether the trial court treated the motion

as one for a dismissal under Civ.R. 12(B)(6) for failure to state a claim or whether it dismissed the matter solely pursuant to 41(B)(1).

## VI

{¶ 34} In light of the foregoing, we sustain the Wards' assignments of error and remand this matter to the Summit County Court of Common Pleas for proceedings consistent with this opinion.

<div align="right">

Judgment vacated
and cause remanded.

</div>

MOORE, P.J., and DICKINSON, J., concur.

DICKINSON, Judge, concurring.

{¶ 35} I agree with the majority because the physician-patient privilege is in derogation of the common law and "must be strictly construed against the party seeking to assert it." *State Med. Bd. of Ohio v. Miller* (1989), 44 Ohio St.3d 136, 140, 541 N.E.2d 602. Unlike with the attorney-client privilege, the common law cannot be relied upon to supplement the statutory language chosen by the General Assembly. The privilege, as provided in Section 2317.02(B), is limited to prohibiting physicians from testifying about communications they receive from their patients and their advice back to those patients. As difficult as it is to believe, it does not protect the patient from being required to testify about those very same communications and that same advice.

{¶ 36} I understand that the outcome in this case may be shocking to the legal and medical communities and will likely lead to unanticipated and, possibly, unfortunate consequences. When a statute is clear on its face, however, it is not the role of this court to look beyond that face. " 'In such a case, we do not resort to rules of interpretation in an attempt to discern what the General Assembly could have conclusively meant or intended in * * * a particular statute—we rely only on what the General Assembly has actually said.' " *State ex rel. Jones v. Conrad* (2001), 92 Ohio St.3d 389, 392, 750 N.E.2d 583, quoting *Muenchenbach v. Preble Cty.* (2001), 91 Ohio St.3d 141, 149, 742 N.E.2d 1128 (Moyer, C.J., dissenting). If, as I suspect, the General Assembly intends the physician-patient privilege to apply as broadly as the attorney-client privilege, it may wish to adopt language like that found in Rule 503(b) of the Uniform Rules of Evidence, which provides: "A patient has a privilege to refuse to disclose and to prevent any other person from disclosing confidential communications made for the purpose of diagnosis or treatment of his [physical,] mental or emotional condition, including alcohol or drug addiction, among himself, [physician or] psychotherapist, and

persons who are participating in the diagnosis or treatment under the direction of the [physician or] psychotherapist, including members of the patient's family."