**WESSELL GENERATIONS, INC., Appellee,**

v.

**BONNIFIELD et al., Appellees;  Lorain County Department
of Job & Family Services et al., Appellants.**

[Cite as *Wessell Generations, Inc. v. Bonnifield*, 193 Ohio App.3d 1, 2011-Ohio-1294.]

Court of Appeals of Ohio,
Ninth District, Lorain County.

No. 09CA009726.

Decided March 21, 2011.

2

[REDACTED]

Dennis P. Will, Lorain County Prosecuting Attorney, and M. Robert Flanagan, Assistant Prosecuting Attorney, for appellants.

Jennie K. Ferguson and Thomas W. Hess, for appellee Wessell.

MOORE, Judge.

{¶ 1} Appellants, Lorain County Department of Job and Family Services ("DJFS") and its employee, Tom Dougherty,[1] appeal from a judgment of the Lorain County Court of Common Pleas that denied their motion to quash a

---

1. Although the record also refers to Dougherty as "Daughtry" and "Daugherty," this court uses the spelling that he recited to the court reporter.

subpoena that commanded Dougherty to appear and give testimony in this case. Because the trial court failed to conduct a balancing of interests to determine whether a qualified privilege should prevent Dougherty from testifying, this court reverses the judgment and remands the cause.

I

{¶ 2} On January 31, 2008, Wessell Generations, Inc., d.b.a. Welcome Nursing Home, filed a complaint against Madaline Bonnifield and her daughter, Lizette Benzing, seeking the unpaid balance allegedly owed by Bonnifield for her stay at its nursing home. Bonnifield died during the pendency of this action, and although her estate was substituted as a party, Wessell eventually settled with the estate and it was dismissed from the case.

{¶ 3} Wessell's claim against Benzing was based on the contractual obligation she assumed when she signed her mother's nursing-home-admission agreement as the "Responsible Person." The agreement provided that Benzing was responsible for payment on her mother's behalf to the extent that she had access to her mother's resources. It is not disputed that neither Bonnifield nor her estate had sufficient resources to pay the outstanding balance of over $40,000. The agreement further provided, however, that the Responsible Person would be obligated to pay an "amount equivalent to * * * revenue lost by the Facility due to the Responsible Person's failure to cooperate in the Medical Assistance eligibility or redetermination process." Wessell maintained that Benzing was personally obligated to pay the outstanding balance because Bonnifield was eligible for Medicaid benefits but did not receive them because Benzing failed to cooperate with DJFS when she applied for Medicaid on her mother's behalf.

{¶ 4} Wessell deposed Benzing about how she handled her mother's care and finances during the latter years of her life. Wessell questioned Benzing about the Medicaid application that she filed on behalf of her mother, including her conversations with Dougherty, with whom she met about the application, and why the Medicaid application had been denied. Benzing responded with vague details about the application process, but did not recall much of what had transpired or why the application was denied.

{¶ 5} In an apparent attempt to prove that Benzing deliberately prevented her mother from qualifying for Medicaid benefits, Wessell subpoenaed Dougherty to attend and give testimony at the trial that was scheduled for December 10, 2009. Dougherty and DJFS moved to quash the subpoena, asserting that Dougherty's testimony was privileged under R.C. 5101.27, which prohibited him from disclosing any information about a Medicaid applicant or recipient. They argued that Wessell sought to ask Dougherty questions about the processing of Bonnifield's Medicaid application, which he could not disclose except to certain government

agencies for purposes directly connected to the administration of the Medicaid program. Wessell responded in opposition, maintaining that the testimony it sought from Dougherty fell outside the scope of R.C. 5101.27 because it involved Benzing, not Bonnifield, and that any information about Bonnifield that might be disclosed was directly related to the administration of the Medicaid program.

{¶ 6} While the motion to quash was pending, Wessell attempted to depose Dougherty, but he refused to answer most of its questions on the advice of counsel. Dougherty and DJFS maintained their position that any information about the Medicaid application that Benzing completed on behalf of Bonnifield, including her conduct and conversations with Dougherty, fell within the scope of R.C. 5101.27.

{¶ 7} The trial court denied the motion to quash, reasoning that information about Benzing did not fall within the scope of R.C. 5101.27, because it did not directly relate to Bonnifield, the Medicaid applicant. The trial court further ordered that Wessell "shall not inquire of the witness with regard to any information which is prohibited from disclosure pursuant to R.C. 5101.27." Dougherty and DJFS appeal, raising two assignments of error, which this court will address together because the appellants argue them jointly.

## II

### ASSIGNMENT OF ERROR I

The trial court abused its discretion when it denied a motion to quash a trial subpoena, thus requiring a non-party witness to testify about confidential information regarding a public assistance recipient in a legal proceeding that was not directly connected with the administration of a public assistance program.

### ASSIGNMENT OF ERROR II

The trial court abused its discretion when it sua sponte granted an "illusory" motion in limine in favor of a non-party trial witness in a private legal proceeding that was not directly connected with the administration of a public assistance program, which "illusory" motion in limine did not prevent the disclosure of confidential information regarding a public assistance applicant.

{¶ 8} Dougherty and DJFS assert that the trial court erred in denying their motion to quash because Dougherty was required by R.C. 5101.27 to keep all information about Bonnifield's Medicaid application confidential. They argue that because Wessell sought to question Dougherty about Bonnifield's Medicaid application and why it was denied, information that falls squarely within the scope of the statute, he could not give any testimony in this case.

## Final, Appealable Order

{¶ 9} Initially, this court must determine whether it has jurisdiction to hear this appeal. Appellate courts have jurisdiction to "review and affirm, modify, or reverse judgments or final orders" of lower courts. Section 3(B)(2), Article IV, Ohio Constitution. An order of the trial court is final and appealable only if it meets the requirements of R.C. 2505.02.

{¶ 10} R.C. 2505.02(B)(4) defines a final order as "[a]n order that grants or denies a provisional remedy and to which both of the following apply:"

(a) The order in effect determines the action with respect to the provisional remedy and prevents a judgment in the action in favor of the appealing party with respect to the provisional remedy.

(b) The appealing party would not be afforded a meaningful or effective remedy by an appeal following final judgment as to all proceedings, issues, claims, and parties in the action.

R.C. 2505.02(A)(3) defines a "provisional remedy" to include the discovery of privileged matter. and case law has further defined that term to encompass "confidential" information, such as trade secrets. See *Northeast Professional Home Care, Inc. v. Advantage Home Health Servs., Inc.*, 188 Ohio App.3d 704, 2010-Ohio-1640, 936 N.E.2d 964, at ¶ 32, citing *Armstrong v. Marusic*, 11th Dist. No. 2001–L–232, 2004-Ohio-2594, 2004 WL 1144377, at ¶ 12. See also *Gibson–Myers & Assoc., Inc. v. Pearce* (Oct. 27, 1999), 9th Dist. No. 19358, 1999 WL 980562. An appealable provisional remedy includes an appeal "from the denial of protection of specific, actual privileged information that if provided would result in the disclosure of potentially privileged material." *Chambers v. AKAAS Corp., Inc.*, 9th Dist. No. 05CA008791, 2006-Ohio-4156, 2006 WL 2336881, at ¶ 9.

{¶ 11} Dougherty and DJFS maintain that the trial court's denial of their motion to quash the subpoena constituted a final, appealable order because it denied a provisional remedy that determined the action and prevented a judgment with respect to whether Dougherty was required to testify in this case. Wessell does not dispute that the trial court's denial of the motion to quash constituted a provisional remedy. It contests whether the trial court's order determined the action and prevented a judgment in the appellants' favor with respect to the provisional remedy and whether they would be afforded an effective remedy by an appeal following a final judgment in this case.

{¶ 12} In support of the motion to quash the subpoena, the appellants argued that Dougherty, who is not a party to this action, could not appear at trial and testify in this case because R.C. 5101.27 prohibited him from disclosing any relevant information. By denying the motion to quash the subpoena, the trial court determined the action with respect to the provisional remedy by ruling that Dougherty would have to appear at trial and testify. See R.C. 2505.02(B)(4)(a).

{¶ 13} Dougherty and DJFS further maintain that they would not be afforded a meaningful remedy by an appeal following final judgment because absent an immediate resolution of the scope of protection afforded by R.C. 5101.27, Dougherty is forced to either (1) violate the subpoena by refusing to appear at trial and/or answer Wessell's questions or (2) testify at trial and potentially violate R.C. 5101.27 by disclosing information that he is required to keep confidential. The Sixth District Court of Appeals held that a similar order that denied a motion to quash the subpoena of the county auditor, a nonparty who claimed a statutory privilege against testifying, was final and appealable under R.C. 2505.02(B)(4). See *Coates v. Ottawa Cty. Bd. of Revision* (Mar. 22, 2002), 6th Dist No. OT–01–041, 2002 WL 471695. The court agreed with the position of the county auditor that although he could refuse to comply with the subpoena and appeal from a later order holding him in contempt, " 'public officials in Ohio should not be required to expose themselves to the hazards of a contempt order in order to obtain a determination of their * * * rights.' " Id. at fn. 1, quoting from the appellant's memorandum in support of jurisdiction. We agree with that reasoning and conclude that this court has jurisdiction to hear this appeal.

## Scope of R.C. 5101.27

{¶ 14} The appellants maintain that the trial court erred by determining that most of the information that Wessell sought to elicit from Dougherty fell outside the scope of confidentiality afforded by R.C. 5101.27. Although this court generally reviews discovery orders for an abuse of discretion, "whether the information sought is confidential and privileged from disclosure is a question of law that is reviewed de novo." *Med. Mut. of Ohio v. Schlotterer*, 122 Ohio St.3d 181, 2009-Ohio-2496, 909 N.E.2d 1237, at ¶ 13.

{¶ 15} R.C. 5101.27(A) prohibits the disclosure of "any information regarding a public assistance recipient for any purpose not directly connected with the administration of a public assistance program." R.C. 5101.26 defines a public-assistance recipient to include an applicant for public assistance. The focus of the parties' dispute is whether information about Benzing, who applied for Medicaid on her mother's behalf, falls within the scope of confidentiality afforded by R.C. 5101.27. The trial court agreed with Wessell that questions about Benzing fell outside the scope of the statute because she was not the Medicaid applicant. Dougherty and DJFS maintain that R.C. 5101.27 encompasses all information gathered by Dougherty when he processed Bonnifield's Medicaid application, including his conversations with Benzing, who applied for Medicaid on her mother's behalf.

{¶ 16} This court found no Ohio case law that construes the breadth of the confidentiality protection afforded by R.C. 5101.27, nor is the scope of protection

clear from the language of the statute. The extent to which it protects information gathered from Medicaid applicants, however, must be sufficient to meet the requirements of federal Medicaid law. See, e.g., Section 302(A)(7), Title 42, U.S.Code; Section 431.301, Title 42, C.F.R. Federal Medicaid regulations require a broad scope of protection, explicitly detailing some of the information that state agencies must safeguard, such as the names and addresses of applicants and recipients, their social and economic conditions, the agency's evaluation of their personal information, and any information received for verifying income eligibility. Section 431.305(b), Title 42, C.F.R. In other words, the federal regulation mandates a broad cloak of confidentiality that protects information that is relevant to the processing of the application, regardless of whether it was gathered from the applicant or another person.

{¶ 17} Wessell stated examples on the record of the questions it intended to ask Dougherty. Many of Wessell's questions focused on the content of Dougherty's conversations with Benzing about the processing of Bonnifield's Medicaid application, such as the information that was required for the Medicaid application and when it was due; whether Benzing seemed to understand what she was required to do; whether she asked questions about the application process; whether she supplied the necessary information in a timely manner; and whether she followed up with him about the application. The questions Wessell sought to ask Dougherty were about Benzing, but the information it was seeking to elicit from him was about the processing of Bonnifield's Medicaid application and the reason it was denied.

{¶ 18} Under the facts of this case, Wessell already knows some of the information that falls squarely within the scope of R.C. 5101.27, such as the identity of Bonnifield and the fact that her application was denied. We must construe R.C. 5101.27 to address different fact situations, however, including public-records requests in which the person seeking information is simply attempting to determine whether a particular person has applied for Medicaid. Presumably, the Medicaid applications of many elderly nursing-home residents are completed by their adult children or other persons acting on their behalf, as they may not be able to do so themselves. If this court were to construe R.C. 5101.27 as failing to protect information about a family member who completed her elderly parent's Medicaid application, it would potentially lead to disclosure of some of the information the statute was intended to protect, including the identity of the Medicaid applicant. We agree with DJFS that the trial court erred in concluding that information about Benzing's filing of her mother's Medicaid application fell outside the scope of R.C. 5101.27.

{¶ 19} Nonetheless, even if much of the information sought by Wessell fell within the scope of confidentiality protection afforded by R.C. 5101.27, we do not agree that this discovery dispute is resolved by R.C. 5101.27. R.C. 5101.27 does

not address whether the information within its scope is privileged from discovery in civil litigation. Moreover, although this statute has been construed by Ohio courts to protect certain information from general disclosure as public records, this court found no Ohio cases that have addressed its applicability to civil discovery of that same information. See, e.g., *State ex rel. Parker v. Lucas Cty. Job & Family Servs.*, 176 Ohio App.3d 715, 2008-Ohio-3274, 893 N.E.2d 558, at ¶ 19–20; *State ex rel. Cincinnati Enquirer v. Jones–Kelley*, 118 Ohio St.3d 81, 2008-Ohio-1770, 886 N.E.2d 206, paragraph one of the syllabus.

{¶ 20} The Ohio Supreme Court has emphasized that statutes enacted to protect certain information from release to the general public do not control whether that same information is subject to disclosure through civil discovery. The court has emphasized that there is "no analogy between discovery and open records disclosure. * * * In discovery actions, the court may weigh the competing private and public interests, but in open records cases, the General Assembly has already done the weighing * * *." *State ex rel. Multimedia, Inc. v. Whalen* (1990), 48 Ohio St.3d 41, 42, 549 N.E.2d 167. Thus, this court must next determine the extent to which information that falls within the scope of R.C. 5101.27 is privileged from discovery in civil litigation.

### Absolute Versus Qualified Privilege

{¶ 21} Although federal law requires states to restrict the release of information about Medicaid applicants to the general public, the Code of Federal Regulations explicitly recognizes that the protected information is not absolutely privileged from discovery but may be subject to the subpoena power of the court:

> If a court issues a subpoena for a case record or for any agency representative to testify concerning an applicant or recipient, the agency must inform the court of the applicable statutory provisions, policies, and regulations restricting disclosure of information.

Section 431.306(f), Title 42, C.F.R.

{¶ 22} Focusing on similar language in its state statute regulating aid to dependent children, the Supreme Court of Washington concluded that because the statute explicitly recognized that the information could be subpoenaed in certain situations, the statute did not provide an absolute bar to civil discovery. *State ex rel. Haugland v. Smythe* (1946), 25 Wash.2d 161, 167, 169 P.2d 706. The *Haugland* court emphasized that the obligation of the agency was simply to inform the court of a need to protect the confidentially of the information, not to disobey the subpoena. Id. It held that the information in that case was discoverable because the trial court's need for it outweighed the public's interest in protecting its confidentiality. Id. at 169–170. It further emphasized the inherent power of the trial court to regulate discovery and its ability to protect the information from disclosure to the general public. Id. at 167–168.

{¶ 23} Courts in other jurisdictions have resolved similar discovery questions by balancing the litigant's need for the information against the public's interest in keeping the information confidential. In *Addie W. v. Charles U.* (1974), 44 A.D.2d 727, 354 N.Y.S.2d 721, the court emphasized that the trial court "must allow * * * a certain measure of wellguarded access to such information," reasoning that the information was "essential" to the alleged father's defense in a paternity action and that "it would be improper to shield those records in a shroud of confidentiality." Id. at 723. See also *Van Alstyne v. Michael E.E.* (1978), 63 A.D.2d 800, 404 N.Y.S.2d 1013, 1014 (holding that the information was not discoverable when it was not for the purpose of "establishing a critical element" of the appellant's case); *Hanson v. Rowe* (1972), 18 Ariz.App. 131, 500 P.2d 916 (emphasizing that the trial court must balance "the potential harm which may flow from the disclosure" against "the benefit to be derived for the correct disposal of pending litigation").

{¶ 24} The Ohio Supreme Court applied a similar balancing test to resolve the issue whether law-enforcement investigatory files were privileged from civil discovery under R.C. 149.43(A)(2), which explicitly exempts them from the definition of public records. *Henneman v. Toledo* (1988), 35 Ohio St.3d 241, 520 N.E.2d 207. The court held that, although law-enforcement investigatory records were protected from disclosure to the general public, there was no absolute privilege to shield the information from a proper discovery request during civil litigation, if the records were otherwise discoverable. Id. at 245. The court recognized that the public had an important interest in protecting the confidentiality of the information, but emphasized that the public's interest must be balanced against the litigant's need for the information. It therefore held:

> Records and information compiled by an internal affairs division of a police department are subject to discovery in civil litigation arising out of alleged police misconduct if, upon an *in camera* inspection, the trial court determines that the requesting party's need for the material outweighs the public interest in the confidentiality of such information.

Id. at syllabus.

{¶ 25} This court has extended the *Henneman* balancing test to a school board's claim that its discussions held in executive session were privileged from discovery pursuant to R.C. 4117.21 and 121.22(G). See *Springfield Local School Dist. Bd. of Edn. v. Ohio Assn. of Pub. School Emp., Local 530* (1995), 106 Ohio App.3d 855, 869–870, 667 N.E.2d 458. Following *Henneman*, this court held that the discovery dispute must be resolved by the trial court conducting an in camera inspection to determine whether the litigant's need for the information outweighed the public's interest in preserving its confidentiality. Id. at 870.

{¶ 26} In a case that predated *Henneman*, the Eleventh District Court of Appeals also applied a balancing test to resolve a discovery dispute over records

held by a children services agency that it was required to keep confidential pursuant to R.C. 5153.17. See *Davis v. Trumbull Cty. Children Servs. Bd.* (1985), 24 Ohio App.3d 180, 184–186, 24 OBR 270, 493 N.E.2d 1011. The court held that the child-abuse-investigation records were not absolutely privileged from discovery and that the trial court should have determined whether they were discoverable by balancing the litigant's need for the information and right to a fair trial against the need to protect the confidentiality.

{¶ 27} We conclude that the reasoning of the Supreme Court in *Henneman* logically extends to this situation and that a balancing test should have been applied to resolve this discovery dispute. R.C. 5101.27 does not provide an absolute bar to civil discovery but instead provides a qualified privilege to protect the confidentiality of information about applicants and recipients of Medicaid. The trial court must resolve discovery disputes involving any such information on a case-by-case basis, through an in camera review of the information where appropriate, and by balancing competing interests to determine whether the litigant's need for the information outweighs the public's interest in preserving its confidentiality. Since the trial court did not conduct such a balancing of competing interests to resolve this discovery dispute, the assignments of error are sustained in part.

{¶ 28} The case is remanded to the trial court for an in camera review of the information that Wessell seeks from Dougherty and a determination of whether Wessell's need for that information outweighs the public's interest in protecting its confidentiality. The trial court may choose to examine Dougherty itself without the parties present, allow the parties to conduct a closed deposition of Dougherty for later in camera review, or use some other method of discovery that "will both preserve the record for review and permit the trial court to examine the responses prior to disclosure, if any, to [Wessell]." *Springfield Local School Dist. Bd. of Edn.*, 106 Ohio App.3d at 870, 667 N.E.2d 458. Should the court determine that any of Dougherty's testimony is discoverable, it retains its discretionary authority under Civ.R. 26(C) to limit or protect the manner in which that information will be disclosed. See *Ward v. Summa Health Sys.*, 184 Ohio App.3d 254, 2009-Ohio-4859, 920 N.E.2d 421, at ¶ 30.

### III

{¶ 29} The assignments of error are sustained in part. The matter is reversed and remanded to the trial court for proceedings consistent with this opinion.

Judgment reversed
and cause remanded.

DICKINSON, P.J., and BELFANCE, J., concur.