[Cite as *J&C Marketing, L.L.C., v. McGinty*, 2013-Ohio-4805.]

# Court of Appeals of Ohio

EIGHTH APPELLATE DISTRICT
COUNTY OF CUYAHOGA

JOURNAL ENTRY AND OPINION
**No. 99676**

## J&C MARKETING, L.L.C.

PLAINTIFF-APPELLEE

vs.

## TIMOTHY J. McGINTY, CUYAHOGA COUNTY PROSECUTOR

DEFENDANT-APPELLANT

**JUDGMENT:**
AFFIRMED IN PART, REVERSED IN PART
AND REMANDED

Civil Appeal from the
Cuyahoga County Court of Common Pleas
Case Nos. CV-784234 and CV-785188

**BEFORE:** E.A. Gallagher, P.J., Kilbane, J., and McCormack, J.

**RELEASED AND JOURNALIZED:** October 31, 2013

**ATTORNEYS FOR APPELLANT**

Timothy J. McGinty
Cuyahoga County Prosecutor
By:    Charles E. Hannan, Jr.
        David Lambert
Assistant County Prosecutors
Justice Center, 8th Floor
1200 Ontario Street
Cleveland, OH    44113

**ATTORNEYS FOR APPELLEE**

**J&C Marketing, L.L.C.**

Daniel F. Gourash
Eric D. Baker
Seeley, Savidge, Ebert & Gourash, Co., L.P.A.
26600 Detroit Road, Third Floor
Cleveland, OH    44145-2397

**ALSO LISTED**

**AMA Ventures D.B.A. Internet Galaxy**

Kent R. Minshall, Jr.
2189 Professor Avenue
Suite 100
Cleveland, OH    44113

**CTD Entertainment, L.L.C.**

Robert G. Mansour
23611 Chagrin Blvd.
Suite 270
Beachwood, OH    44122

**Cyber Time Café Maple Hts., L.L.C.**

Kenneth A. Bossin
1392 SOM Center Road
Mayfield Heights, OH    44124

Martin S. Delahunty, III
Slater & Zurz, L.L.P.
One Cascade Plaza
Suite 2210
Akron, OH    44308

**Cyber World Entertainment, et al.**

Charles H. Cooper, Jr.
Barton Keyes
2175 Riverside Drive
Columbus, OH    43221

Angelo F. Lonardo
Mitchell J. Yelsky
Yelsky & Lonardo
75 Public Square
Suite 800
Cleveland, OH    44113

**Cyberspace Westlake, L.L.C., etc.**

Erin R. Flanagan
1370 Ontario Street
2000 Standard Building
Cleveland, OH    44113

**Feelin' Lucky, L.L.C.**

Lawrence J. Kramer, Jr.

Jacqueline Kim Roberts
J.K. Roberts Law Group, Ltd.
17601 W. 130th Street
Suite 4B
North Royalton, OH    44133

**Jimkat, L.L.C. d.b.a. Cyberspace Café**

Jeffry F. Kelleher
1540 Leader Building
526 Superior Avenue
Cleveland, OH    44114

**Land Of Loot And Piggy Bank**

Robert Wakut
3122 West 14th Street
Cleveland, OH    44109

**LV & Ibnee, L.L.C., et al.**

Nate N. Malek
Law Office of Nate N. Malek, L.L.C.
29025 Bolingbrook Road
Cleveland, OH    44124

**Nova's Internet Sweepstakes Café**

Michael L. Nelson
55 Public Square
Suite 1500
Cleveland, OH    44103

**SOR, L.L.C. d.b.a. Lucky Palms**

Karen P. Desanto-Kellogg
Robert P. Desanto

Desanto & Kellogg, L.L.C.
432 Center Street
Ashland, OH    44805

**Surf City, L.L.C.**

George J. Argie
Dominic J. Vitantonio
Argie, D'Amico & Vitantonio
6449 Wilson Mills Road
Mayfield Village, OH    44143

**Surf Shop, L.L.C.**

Michael J. O'Shea
Ronald A. Annotico
Lipson O'Shea Legal Group
Beachcliff Market Square
19300 Detroit Road, Suite 202
Rocky River, OH    44116

**Winner's Circle Café, L.L.C.**

Antonio Franceschini
2000 Auburn Drive
Suite 200
Beachwood, OH    44122

EILEEN A. GALLAGHER, P.J.:

{¶1}    Appellant Timothy J. McGinty, Cuyahoga County Prosecutor, appeals from

the decision of the Cuyahoga County Court of Common Pleas that ordered the prosecutor's office to turn over certain materials and answer interrogatories in a declaratory judgment action. For the following reasons, we affirm, in part, and reverse, in part, and remand.

{¶2} This interlocutory appeal is taken from a declaratory judgment action brought by numerous businesses operating internet sweepstakes cafés within Cuyahoga County. Appellee J&C Marketing, L.L.C. is one such party who owns internet sweepstakes cafés within the county. Appellee, among others, received a cease and desist letter from the Cuyahoga County prosecutor on May 30, 2012, asserting that such cafés were operating in violation of several Ohio gambling laws, including R.C. 2915.02, 2915.03 and 2915.04. The letter directed the businesses to cease operation and threatened criminal prosecution for failing to comply.

{¶3} On June 4, 2012, appellee filed a declaratory judgment action against the prosecutor seeking a declaration that internet sweepstakes cafés are not subject to prosecution under R.C. Chapter 2915 et seq., and further seeking temporary, preliminary and permanent injunctive relief.[1]

{¶4} The question presently before this court is not the legality of internet sweepstakes cafés in Cuyahoga County. Recently in *Cleveland v. Thorne*, 8th Dist.

---

[1] Numerous other internet sweepstakes café businesses operating within Cuyahoga County intervened as plaintiffs in appellee's declaratory judgment action.

Cuyahoga Nos. 98365, 98474, 98503, 98695, 98696, and 98697, 2013-Ohio-1029, 987 N.E.2d 731, this court upheld the convictions of certain proprietors of "cyber cafés" or "internet cafés" for sweepstakes ventures that this court found to constitute gambling in violation of Cleveland Codified Ordinances ("CCO") 611.02(a)(2), 611.05 (operating a gambling house) and 625.08 (possession of criminal tools).

{¶5} Our role in the present appeal is not to judge the outcome of this case. Instead we are faced with a unique discovery dispute. The principal question posed by this appeal is the extent to which information and records compiled by law enforcement and a county prosecutor's office are subject to discovery in a civil action. We are mindful of the sweeping implications of this case. The prosecutor asserts that appellee and other targets of the internet sweepstakes cafés possess a mischievous purpose in bringing the present declaratory judgment action. From the prosecutor's point of view, this action is merely a thinly veiled attempt by targets of an ongoing criminal investigation to preemptively obtain, through civil discovery, investigatory materials compiled by law enforcement and internal discussions of the prosecutor's office towards the purpose of stymying such investigation and hampering any criminal prosecution. Appellee asserts that pursuant to *Peltz v. S. Euclid*, 11 Ohio St.2d 128, 228 N.E.2d 320 (1967), a declaratory judgment action is the appropriate vehicle for testing the application of Ohio's gambling laws to its business and that the requested discovery of appellant's investigatory results is necessary to proceed with this civil action.

{¶6} Appellee and other sweepstakes cafés who have joined in this action have

sought, through discovery, materials relating to the ongoing law enforcement investigation against the internet sweepstakes cafés in Cuyahoga County including investigative reports compiled by undercover police officers, email exchanges between the prosecutor's office and lead investigators and the identities of parties involved in the investigation, including experts.

{¶7} Appellant objected to such discovery and, in his three assignments of error, asserts that the trial court erred in ordering him to produce certain materials and answer certain interrogatories. Appellant argues that the trial court's discovery order violates the law enforcement investigatory privilege, the attorney work-product doctrine and the deliberative-process privilege. Because appellant's three assignments of error each apply in varying and overlapping parts to the discovery sought, we address them together for ease of discussion.

{¶8} Civ.R. 26(B) provides that parties may obtain discovery on any unprivileged matter that is relevant to the subject matter involved in the pending action. Although the information sought need not itself be admissible at trial, it should appear "reasonably calculated to lead to the discovery of admissible evidence."

{¶9} Prior to delving into the specific discovery materials sought, we must appropriately define the law enforcement investigatory privilege, the attorney work-product doctrine and the deliberative-process privilege within the context of this unique case. We note that when a discovery issue involves an alleged privilege, it is a question of law that we review de novo. *Ward v. Summa Health Sys.*, 128 Ohio St.3d

212, 2010-Ohio-6275, 943 N.E.2d 514, ¶ 13.

## I. The Law Enforcement Investigatory Privilege

{¶10} The prosecutor contends that discovery of nearly all of the contested material is protected by the law enforcement investigatory privilege. The prosecutor primarily relies upon cases establishing the law enforcement investigatory privilege under federal law and laws of other states. We find reliance on these cases unnecessary. To understand this privilege under Ohio law, we must first consider R.C. 149.43 that, although not applicable in the present instance, provides important context to our understanding of the claimed privilege.

{¶11} R.C. 149.43 excludes confidential law enforcement investigatory records from the definition of "public records" that must be made available for inspection. R.C. 149.43(A)(2) provides:

> (2) "Confidential law enforcement investigatory record" means any record that pertains to a law enforcement matter of a criminal, quasi-criminal, civil, or administrative nature, but only to the extent that the release of the record would create a high probability of disclosure of any of the following:
>
> (a) The identity of a suspect who has not been charged with the offense to which the record pertains, or of an information source or witness to whom confidentiality has been reasonably promised;
>
> (b) Information provided by an information source or witness to whom confidentiality has been reasonably promised, which information would reasonably tend to disclose the source's or witness's identity;
>
> (c) Specific confidential investigatory techniques or procedures or specific investigatory work product;

(d) Information that would endanger the life or physical safety of law enforcement personnel, a crime victim, a witness, or a confidential information source.

{¶12} Although records that qualify as confidential law enforcement investigatory records under R.C. 149.43(A)(2) are not subject to public disclosure pursuant to the statute, the Ohio Supreme Court, in *Henneman v. Toledo*, 35 Ohio St.3d 241, 520 N.E.2d 207 (1988), held that R.C. 149.43 operates only to exempt confidential law enforcement investigatory records from the requirement of availability to the general public and does not protect such records from a proper discovery request in the course of civil litigation, provided that such records are otherwise discoverable.

{¶13}   In *Henneman*, the Ohio Supreme Court recognized that a qualified privilege exists for information that was compiled in the course of a police internal affairs investigation in the context of civil discovery. The court stated:

> [W]e recognize that the public has an important interest in the confidentiality of information compiled in the course of police internal investigations. In many instances, disclosure of such information may work to undermine investigatory processes by discouraging persons with knowledge from coming forward or by revealing the identities of confidential sources. There may very well be an overriding need in particular cases for protecting the identities of members of the police force or of the general public who come forward with information about alleged police abuses. * * * Another equally important interest may exist in some cases: the need for concealing the identities of informants or citizens who participate in internal investigations.

*Id*. at 245-246.

{¶14}   The *Henneman* court concluded that:

[R]ecords and information compiled by an internal affairs division of a

police department are subject to discovery in civil litigation arising out of alleged police misconduct if, upon an in camera inspection, the trial court determines that the requesting party's need for the material outweighs the public interest in the confidentiality of such information. Of course, the request for such information is still subject to the normal standards of discovery. For example, if the files contain privileged medical records or if the request is vague or burdensome, a properly delineated protective order may be issued upon motion. But we reject the notion that an absolute privilege automatically protects internal investigation reports from a legitimate request for discovery.

*Id*. at 246.

**{¶15}** Since the *Henneman* decision, the rule established in that case has been extended to apply the *Henneman* balancing test to a school board's claim that its discussions held in executive session were privileged from discovery. *Springfield Local School Dist. Bd. of Edn. v. Ohio Assn. Pub. School Emp., Local 530*, 106 Ohio App.3d 855, 869-870, 667 N.E.2d 458 (9th Dist.1995), and the confidentiality of information about applicants and recipients of Medicaid. *Wessell Generations, Inc. v. Bonnifield*, 193 Ohio App.3d 1, 2011-Ohio-1294, 950 N.E.2d 989 (9th Dist.).

**{¶16}** Furthermore, in *State ex rel. Multimedia, Inc. v. Whalen*, 48 Ohio St.3d 41, 549 N.E.2d 167 (1990), the Ohio Supreme Court held that *Henneman* extended beyond protecting internal affairs documents but was applicable to "determine whether a litigant's right to discovery outweighs the public interest in nondisclosure of an ongoing investigation." *Id*. at 41. The court stated that the factors recognized in the leading federal case on the investigatory privilege, *Frankenhauser v. Rizzo*, 59 F.R.D. 339 (E.D.Pa.1973), had been adopted as part of the *Henneman* test. *Id*. at 41. The

*Frankenhauser* factors include:

> (1) the extent to which disclosure will thwart governmental processes by discouraging citizens from giving the government information; (2) the impact upon persons who have given information of having their identities disclosed; (3) the degree to which governmental self-evaluation and consequent program improvement will be chilled by disclosure; (4) whether the information sought is factual data or evaluative summary; (5) whether the party seeking the discovery is an actual or potential defendant in any criminal proceeding either pending or reasonably likely to follow from the incident in question; (6) whether the police investigation has been completed; (7) whether any intradepartmental disciplinary proceedings have arisen or may arise from the investigation; (8) whether the plaintiff's suit is non-frivolous and brought in good faith; (9) whether the information sought is available through other discovery or from other sources; and (10) the importance of the information sought to the plaintiff's case.

*Frankenhauser* at 344.

**{¶17}** Although the Supreme Court has not addressed a case postured precisely as the present case, we find the privilege established in *Henneman* to be applicable because the same concerns leading to the adoption of the privilege in that case exist in this case. We, therefore, apply the balancing test of *Henneman* to the materials the appellant claims are protected from discovery by the law enforcement investigatory privilege.[2]

## II. The Attorney Work-product Privilege

**{¶18}** Attorney work product in Ohio is governed by Civ.R. 26(B)(3), which provides in relevant part: "a party may obtain discovery or documents and tangible

---

[2] We apply the *Henneman* balancing test with guidance from the *Frankenhauser* factors that we find useful to the *Henneman* analysis.

things prepared in anticipation of litigation or for trial by or for another party or that party's representative * * * only upon a showing of good cause therefor * * *."

{¶19} The Ohio Supreme Court has addressed the standard of disclosure of work product. "Attorney work product, including but not limited to mental impressions, theories, and legal conclusions, may be discovered upon a showing of good cause if it is directly at issue in the case, the need for the information is compelling, and the evidence cannot be obtained elsewhere." *Squire, Sanders & Dempsey v. Givaudan Flavors Corp.*, 127 Ohio St.3d 161, 2010-Ohio-4469, 937 N.E.2d 533, paragraph two of the syllabus. The protection for intangible work product exists because "[o]therwise, attorneys' files would be protected from discovery, but attorneys themselves would have no work product objection to depositions." *Id*. at ¶ 58, quoting *In re Seagate Technology, L.L.C.*, 497 F.3d 1360 (Fed.Cir. 2007).

{¶20} The Ohio Supreme Court has explained that "the determination of whether materials are protected by the work-product doctrine and the determination of 'good cause' under Civ.R. 26(B)(3), are 'discretionary determinations to be made by the trial court.'" *Sutton v. Stevens Painton Corp.*, 192 Ohio App.3d 68, 2011-Ohio-841, 951 N.E.2d 91, ¶ 12 (8th Dist.), quoting *State ex rel. Greater Cleveland Regional Transit Auth. v. Guzzo*, 6 Ohio St.3d 270, 271, 452 N.E.2d 1314 (1983). Discretionary decisions are reviewed under an abuse of discretion standard of review. *Id*. It is an abuse of discretion if the court's ruling is "unreasonable, arbitrary, or unconscionable." *Blakemore v. Blakemore*, 5 Ohio St.3d 217, 219, 450 N.E.2d 1140 (1983).

## III. The Deliberative-Process Privilege

{¶21} Finally, the prosecutor asserts that the trial court's discovery orders intrude improperly into internal deliberations and prosecutorial discretion and, as such, violate the deliberative-process privilege.

{¶22} In *State ex rel. Dann v. Taft*, 109 Ohio St.3d 364, 2006-Ohio-1825, 848 N.E.2d 472, the Ohio Supreme Court described the deliberative-process privilege as follows:

> [I]t allows the government to withhold documents and other materials that would reveal "advisory opinions, recommendations and deliberations comprising part of a process by which governmental decisions and policies are formulated." Predecisional and deliberative materials are protected, but documents that merely state or explain a decision that has already been made or contain purely factual information are not. The privilege extends beyond the chief executive officer of a governmental unit such as a president or governor. This category of executive privilege is grounded in judicial recognition of a "valid need for protection of communications between high Government officials and those who advise and assist them in the performance of their manifold duties."

(Citations omitted.) *Id*. at ¶ 34

{¶23} The deliberative-process privilege has been rarely recognized under Ohio law, and we are unaware of any case in Ohio applying the privilege to a county prosecutor. We note that most, if not all, of the materials the privilege would conceivably protect in this case would already be protected under the law enforcement investigatory privilege and the attorney work-product doctrine, rendering reliance on the deliberative-process somewhat redundant and unnecessary. Nonetheless, appellee asserts that the materials they seek in discovery are purely factual in nature rendering the

deliberative-process privilege inapplicable.

{¶24} Having established the various privileges and doctrines that appellant has invoked, we proceed to examine their application to the contested materials sought in discovery. We begin with the list of documents that the trial court marked "Y," standing for "yes, the document is to be produced."

{¶25} We affirm the trial court's order to produce the police reports containing factual information gathered in the undercover investigation of the internet sweepstakes cafés within Cuyahoga County. These reports are directly relevant to the alleged conduct of the internet sweepstakes cafés involved in this case because any factual disputes regarding the nature of their business must necessarily be resolved prior to the ultimate resolution of the legal question at the heart of this declaratory judgment action. Specifically items with the following "bates" numbers are to be produced: #001-003, #005-252 and #254-307.

{¶26} The trial court's order to produce items #004 and #253 is reversed. These materials contain primarily internal communications or investigative decisions and lack the factual content that the other reports contain. We find these materials lacking in relevant information to this civil action and, as such, are precluded from discovery pursuant to the law enforcement investigatory privilege.

{¶27} The trial court shall redact the names of the undercover investigators from the police reports ordered to be produced. However, to the extent that appellant intends to rely on facts in any particular report or a factual account of a particular investigator,

the appellant is obligated to disclose such investigator's name consistent with our holding on appellee's interrogatories regarding witnesses appellant intends to call at trial. *See*, *e.g.*, *State v. Bragg*, 8th Dist. Cuyahoga No. 58859, 1991 Ohio App. LEXIS 3162 (June 27, 1991).

{¶28} We next consider a series of emails between the Cuyahoga County prosecutor involved with the investigation and a lead investigator on the case. These emails contain investigatory decisions, procedural discussions and exchanges of legal research and opinion. For the most part, the emails can be described as internal communications regarding how to proceed with the investigation. We are considerably reluctant to recognize a legal proposition whereby an individual or business involved in a criminal investigation could acquire the internal email discussions of a prosecutor by way of discovery in a preemptive civil action. Appellee argues that it is entitled to the thought process and legal theories of appellant in regards to the alleged illegality of internet sweepstakes cafés within Cuyahoga County. We are not aware of any authority for the proposition that appellant is obligated to conduct appellee's legal research for it. To the extent that appellee seeks a legal analysis applying a gambling law to an internet sweepstakes café, we direct appellee to our decision in *Thorne*.

{¶29} We find that the vast majority of the emails are protected by the law enforcement investigatory privilege, and because they are completely lacking in factual content relevant to the present dispute, we hold that they are not subject to discovery. Even if such emails were not protected by the law enforcement investigatory privilege,

we note that a significant number of such emails would also qualify as attorney work product.

{¶30} We reverse the trial court's order to produce the email items with the following "bates" numbers: 308, 315, 316, 318-324, 326, 330-332, 335-342, 344, 345, 347-354, 356-359, 361-363, 365-367, 369, 370, 379-382, 392-394, 419, 428, 434, 439, 442, 450, 451, 456-458, 461, 462, 467, 468, 473, 474, 477, 478, 484, 487-491, 493, 496, 498, 499, 504, 506, 507, 511-513, 520-522, 532, 534, 535, 539, 540, 559, 569, and 591-594. We affirm the trial court's order to produce the emails with the following "bates" numbers: 373-378, 486, 497, 524, 548, 561, 595.

{¶31} Finally, with regard to the interrogatories that the trial court ordered appellant to answer, we find that a significant number pose questions that are not relevant to the underlying declaratory action and unnecessarily intrude upon the investigative process. Some confusion exists as to the precise interrogatories the trial court's order compelled the appellant to answer. The order references both interrogatories and amended interrogatories. Both of the motions to compel filed by appellee and plaintiffs, Cyber Oasis, Page-Jaq and New Heights, provide only amended interrogatories as attachments. To eliminate any confusion, we confine our review to appellee's amended set of interrogatories and the interrogatories of Tel-Connect. To the extent that any other interrogatories remain, the trial court shall order appellant to answer them consistent with the holding of this opinion.

{¶32} Regarding the amended interrogatories of appellee, the trial court's order

is affirmed as to interrogatories 1 through 4 and 24 through 28. The trial court's order is reversed as to interrogatories 5 through 24 that we find protected pursuant to the law enforcement investigatory privilege and the attorney work-product doctrine. In regards to the Tel-Connect interrogatories, the trial court's order is affirmed as to interrogatories 1 through 4, 10, 11, 13, 14, 20 and 23. The trial court's order is reversed as to interrogatories 5 through 8, 12, 15 through 19 and 21.

{¶33} Appellant's assignments of error are sustained, in part, and overruled, in part.

{¶34} The judgment of the trial court is affirmed, in part, reversed, in part, and the case is remanded for further proceedings consistent with this opinion.

It is ordered that appellant and appellee share the costs herein taxed.

The court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate issue out of this court directing the common pleas court to carry this judgment into execution.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.

_____

EILEEN A. GALLAGHER, PRESIDING JUDGE

MARY EILEEN KILBANE, J., and
TIM McCORMACK, J., CONCUR