J & C Marketing, L.L.C., Appellee, et al.,
*v.* McGinty, Pros. Atty., Appellant.

[Cite as *J & C Marketing, L.L.C. v. McGinty,*
143 Ohio St.3d 315, 2015-Ohio-1310.]

(No. 2013–1963—Submitted September 10, 2014—Decided April 7, 2015.)

Kennedy, J.

{¶ 1} In this discretionary appeal from the Eighth District Court of Appeals, we consider whether information related to a criminal law-enforcement investigation is absolutely privileged against disclosure in a civil suit brought by the alleged target of the criminal investigation. Cuyahoga County Prosecuting Attorney Timothy J. McGinty appeals from a judgment affirming in part the trial court's order compelling him to produce in discovery in a civil action certain information related to a criminal law-enforcement investigation.

{¶ 2} We hold that the law-enforcement investigatory privilege is not absolute, and we reaffirm the validity of the balancing test we adopted in *Henneman v. Toledo,* 35 Ohio St.3d 241, 245, 520 N.E.2d 207 (1988), for weighing the interests of law enforcement in keeping the information confidential against the needs of a civil litigant who requests the information in discovery. We therefore affirm the judgment of the court of appeals.

### Facts and Procedural History

{¶ 3} Appellee, J & C Marketing, L.L.C., owns two Internet sweepstakes cafés called "Sweepstakes Club" in Cuyahoga County, and the cafés purported to sell Internet access at the rate of $1 per four minutes of use and to give free electronic promotional sweepstakes entries to customers based on the number of minutes they purchase. J & C Marketing claimed that no purchase was necessary to enter the sweepstakes and that upon request, the cafés would provide a free entry in the sweepstakes. Customers could then use a café's computer terminals to play games to reveal the results of their sweepstakes

entries. Winning entries could be redeemed for cash or more Internet-access time.

{¶ 4} At some point, law-enforcement officials in Cuyahoga County began investigating whether Internet sweepstakes cafés in fact promote illegal gambling. Undercover officers visited Internet sweepstakes cafés throughout the county and summarized their findings in reports that reveal the identities of the officers and potential sources of information, the date and time surveillance occurred at a particular café, and the techniques and procedures used to conduct the investigation.

{¶ 5} Based on these investigations, a Cuyahoga County grand jury returned an indictment on May 30, 2012, against ten individuals and seven companies, alleging that they had used an Internet gambling system known as "VS2" to conceal illegal gambling by presenting it as an Internet sweepstakes.

{¶ 6} That same day, the Cuyahoga County prosecuting attorney mailed letters to J & C Marketing and various other proprietors of Internet sweepstakes cafés that had not used the VS2 software and threatened criminal prosecution if they did not immediately stop running the sweepstakes. To avoid possible indictment, appellee and other owners of Internet-sweepstakes cafés closed their businesses.

{¶ 7} On June 4, 2012, after closing both of its Internet sweepstakes cafés, J & C Marketing filed this action for a declaratory judgment, a temporary restraining order, and temporary and permanent injunctive relief to prohibit the Cuyahoga County prosecuting attorney from enforcing gambling laws against it with respect to Internet sweepstakes. *See Peltz v. S. Euclid,* 11 Ohio St.2d 128, 228 N.E.2d 320 (1967), paragraph one of the syllabus (a party threatened with criminal penalties if he proceeds to act has standing to test the validity of the law criminalizing the act). Various other operators of Internet sweepstakes cafés that received similar cease-and-desist letters intervened, but they are not parties here.

{¶ 8} Appellee insisted that payment to play its Internet sweepstakes games was not required. Therefore, appellee asserted, its business did not promote gambling as defined in *Fed. Communications Comm. v. Am. Broadcasting Co., Inc.,* 347 U.S. 284, 74 S.Ct. 593, 98 L.Ed. 699 (1954), which held that gambling is the union of chance, prize, and consideration, *id.* at 290. Appellee said that because it did not require customers to pay to enter the sweepstakes, its business did not violate the law.

{¶ 9} The trial court granted a temporary restraining order and made preliminary findings that the Internet sweepstakes cafés were not the subject of a pending criminal case and did not promote illegal gambling. J & C Marketing then sought to compel discovery of records and information related to the ongoing criminal investigation of Internet sweepstakes cafés in Cuyahoga County.

In its discovery requests, through depositions, requests for production of documents, requests for admission, and interrogatories, appellee sought to obtain the evidence that the prosecuting attorney alleged showed that appellee had received consideration from sweepstakes customers. The prosecuting attorney objected to these requests, asserting the attorney-work-product privilege, deliberative-process privilege, and law-enforcement investigatory privilege.

{¶ 10} The trial court conducted an in camera inspection of the documents that J & C Marketing sought, and it reviewed the propounded interrogatories. It ordered the prosecuting attorney to produce investigative reports compiled by undercover officers, e-mail exchanges between the prosecuting attorney's office and investigators, and answers to interrogatories requiring the disclosure of confidential information about ongoing criminal investigations.

{¶ 11} The prosecuting attorney filed an interlocutory appeal. The Eighth District Court of Appeals reviewed the requested material, balanced the competing interests of J & C Marketing and the prosecuting attorney, and affirmed in part and reversed in part the ruling of the trial court. It recognized the existence of the law-enforcement investigatory privilege but held that reports prepared during the undercover investigation of the Internet sweepstakes cafés were discoverable because they "are directly relevant to the alleged conduct of the internet sweepstakes cafés involved in this case because any factual disputes regarding the nature of their business must necessarily be resolved prior to the ultimate resolution of the legal question at the heart of this declaratory judgment action." 2013-Ohio-4805, 4 N.E.3d 1063, ¶ 25 (8th Dist.).

{¶ 12} The court of appeals directed the trial court to redact the names of the undercover officers when the reports were produced. Nonetheless, it ordered the prosecuting attorney to answer interrogatories regarding witnesses and evidence intended to be presented at trial despite recognizing that this ruling could result in revealing the identity of undercover officers.

{¶ 13} But the appellate court held that e-mails between the prosecuting attorney's office and criminal investigators were protected by the law-enforcement investigatory privilege and the attorney-work-product privilege.

{¶ 14} The prosecuting attorney appealed to this court, and we accepted for review his one proposition of law: "Records and information generated during the course of an open and ongoing undercover criminal investigation are not subject to disclosure based on the law enforcement investigatory privilege."

## Legal Analysis

{¶ 15} The prosecuting attorney alleges that the court of appeals erred in balancing the competing interests involved here because an absolute privilege

protected the information at issue. Whether the information was protected by an absolute privilege is a question of law, which we review de novo.

{¶ 16} We begin our analysis with Civ.R. 26(B), which states:

> Unless otherwise ordered by the court in accordance with these rules, the scope of discovery is as follows:
>
> (1) *In General.* Parties may obtain discovery regarding any matter, not privileged, which is relevant to the subject matter involved in the pending action * * *.

(Italics sic.)

{¶ 17} The common law recognizes a qualified privilege for law-enforcement investigatory information, including confidential sources, surveillance information, and law-enforcement techniques and procedures. *See, e.g., In re New York City,* 607 F.3d 923, 941 (2d Cir.2010); *Puerto Rico v. United States,* 490 F.3d 50, 64 (1st Cir.2007); *In re United States Dept. of Homeland Sec.,* 459 F.3d 565, 570 (5th Cir.2006); *Dellwood Farms, Inc. v. Cargill, Inc.,* 128 F.3d 1122, 1124 (7th Cir.1997) (the law-enforcement investigatory privilege is a "judge-fashioned evidentiary privilege").

{¶ 18} However, the privilege is not absolute: it is limited by "the fundamental requirements of fairness," so that when the privileged information "is relevant and helpful to the defense of an accused, or is essential to a fair determination of a cause, the privilege must give way." *Roviaro v. United States,* 353 U.S. 53, 60–61, 77 S.Ct. 623, 1 L.Ed.2d 639 (1957). A strong presumption militates against lifting the privilege. *In re New York City* at 929. Plaintiffs may obtain law-enforcement investigatory material only upon showing a "compelling need." *Id.*

{¶ 19} Therefore, courts have applied a balancing test to determine whether the privilege applies. *In re New York City* at 945; *Black v. Sheraton Corp. of Am.,* 564 F.2d 531, 545 (D.C.Cir.1977); 26A Wright & Miller, *Federal Practice and Procedure,* Section 5681 (1992). In *Henneman,* 35 Ohio St.3d 241, 520 N.E.2d 207, we weighed the legitimate public interest in the confidentiality of the information obtained in a police department's internal-affairs investigation against the needs of a litigant to obtain evidence in support of a nonfrivolous cause of action. *Id.* at 242. With regard to the claims brought under federal law, we applied the factors delineated in *Frankenhauser v. Rizzo,* 59 F.R.D. 339 (E.D.Pa.1973):

> (1) [T]he extent to which disclosure will thwart governmental processes by discouraging citizens from giving the government information; (2) the

impact upon persons who have given information of having their identities disclosed; (3) the degree to which governmental self-evaluation and consequent program improvement will be chilled by disclosure; (4) whether the information sought is factual data or evaluative summary; (5) whether the party seeking the discovery is an actual or potential defendant in any criminal proceeding either pending or reasonably likely to follow from the incident in question; (6) whether the police investigation has been completed; (7) whether any intradepartmental disciplinary proceedings have arisen or may arise from the investigation; (8) whether the plaintiff's suit is non-frivolous and brought in good faith; (9) whether the information sought is available through other discovery or from other sources; and (10) the importance of the information sought to the plaintiff's case.

*Id.* at 344. In *Henneman,* we affirmed the judgment of a court of appeals that ordered production of police department internal-affairs-investigation information, but we also acknowledged that "the confidentiality of such information often serves a legitimate interest, particularly in an ongoing criminal investigation." *Id.* at 243. We later noted that the *Frankenhauser* factors for evaluating discovery issues extended beyond claims brought under federal law and beyond cases related to information obtained in internal-affairs investigations. *State ex rel. Multimedia, Inc. v. Whalen,* 48 Ohio St.3d 41, 549 N.E.2d 167 (1990).

{¶ 20} The interests of both parties are significant here. The prosecuting attorney must protect the safety of informants and others identified in the investigation, safeguard the integrity of his investigative processes, and guard against nuisance lawsuits that are brought merely to gain access to investigative information. But appellee's interests in obtaining discovery are also strong, because by issuing the cease-and-desist letter, the prosecuting attorney in effect shut down appellee's business, even though the business had never even been charged with violating the law. Appropriately, the court of appeals carefully balanced these interests by applying the *Frankenhauser* factors.

{¶ 21} In conducting its review, the court of appeals applied both Civ.R. 26(B)(1) and the *Frankenhauser* factors adopted in *Henneman.* It acknowledged the "sweeping implications of this case," 2013-Ohio-4805, 4 N.E.3d 1063, ¶ 5, and carefully examined each requested item. The court ordered factual information released, *id.* at ¶ 25, 27, but reversed the trial court's order to the extent necessary to protect "internal communications or investigative decisions" that lacked factual content, *id.* at ¶ 26, 28–31. Because information related to a law-enforcement investigation is not entitled to absolute privilege, the court of appeals did not err in determining that a balancing test was required.

{¶ 22} The prosecuting attorney's proposition of law that an absolute privilege protects open criminal law-enforcement investigatory files from civil discovery in a civil suit against his office simply has no support in the law. We reaffirm *Henneman*'s holding that information related to a law-enforcement investigation is protected from disclosure in civil litigation unless the party seeking discovery demonstrates that it has a compelling need for the information and that that need outweighs the public's interest in keeping the information confidential. The court of appeals determined, after applying our precedent, that J & C Marketing's need for some of the investigatory material outweighed the law-enforcement interest in the confidentiality of that information. We reject the prosecuting attorney's proposition of law.

## Conclusion

{¶ 23} Based on the foregoing, we hold that the law-enforcement investigatory privilege is not absolute, and we reaffirm the validity of the balancing test we adopted in *Henneman*, 35 Ohio St.3d 241, 520 N.E.2d 207, for weighing the interests of law enforcement against the needs of a civil litigant who requests the information in discovery. We therefore affirm the judgment of the court of appeals.

Judgment affirmed.

O'CONNOR, C.J., and PFEIFER, LANZINGER, FRENCH, and O'NEILL, JJ., concur.

O'DONNELL, J., dissents.

---

**O'DONNELL, J., dissenting.**

{¶ 24} I respectfully dissent.

{¶ 25} Cuyahoga County Prosecuting Attorney Timothy J. McGinty appeals from a judgment of the Eighth District Court of Appeals affirming the trial court's order compelling the state to produce certain confidential law-enforcement investigatory records in response to a discovery request filed by J & C Marketing, L.L.C., which had filed a declaratory judgment action in Cuyahoga County Common Pleas Court case No. CV–12–784234 seeking a declaration that its Internet sweepstakes cafés do not promote illegal gambling.

{¶ 26} At issue in this case is the law-enforcement investigatory privilege, a qualified executive privilege that protects information from discovery in civil litigation when its disclosure would reveal confidential law-enforcement techniques and procedures, undermine the confidentiality of sources and undercover officers, or impair the ability of law enforcement to conduct undercover investigations. *See generally Henneman v. Toledo*, 35 Ohio St.3d 241, 245–246, 520

N.E.2d 207 (1988); *Roviaro v. United States,* 353 U.S. 53, 60–61, 77 S.Ct. 623, 1 L.Ed.2d 639 (1957); *Puerto Rico v. United States,* 490 F.3d 50, 64 (1st Cir.2007).

{¶ 27} In my view, because law-enforcement investigatory records are confidential for the same reasons that grand jury proceedings are secret, a civil litigant seeking to overcome this privilege must demonstrate that it has a particularized need for information related to a criminal investigation, that the ends of justice require disclosure to ensure the litigant a fair trial, and that its need for discovery outweighs the public interest in confidentiality.

{¶ 28} Here, J & C Marketing, along with other Internet café owners who are not parties to this appeal, sought information from law enforcement compiled during an ongoing criminal investigation, but it did not demonstrate that it has a particularized need for this information, that the ends of justice require disclosure, or that its interest in discovery outweighs the public interest in the continued confidentiality of the information.

{¶ 29} Accordingly, because J & C Marketing failed to prove entitlement to these documents and records, I would reverse the judgment of the appellate court.

### Facts and Procedural History

{¶ 30} Law-enforcement officials in Cuyahoga County conducted undercover investigations to determine whether Internet sweepstakes cafés promoted illegal gambling, and based on those investigations, the Cuyahoga County Grand Jury indicted ten individuals and seven companies on May 30, 2012, alleging that they used an Internet gambling system known as "VS2" to conceal illegal gambling by presenting it as an Internet sweepstakes. That same day, the prosecuting attorney for Cuyahoga County mailed letters to J & C Marketing and other owners of Internet sweepstakes cafés stating that if they did not immediately cease and desist running the sweepstakes, they would be subject to criminal prosecution.

{¶ 31} J & C Marketing sought a declaratory judgment, a temporary restraining order, and temporary and permanent injunctive relief to prohibit the prosecutor from enforcing gambling laws against it. Other operators who received cease and desist letters intervened.

{¶ 32} In the course of that litigation, J & C Marketing sought to compel the discovery of records and information related to the ongoing criminal investigation of Internet sweepstakes cafés in Cuyahoga County. In these records, undercover officers documented their visits to Internet sweepstakes cafés throughout the county and summarized their findings in reports that reveal the identities of the officers and potential sources of information, the date and time surveillance occurred at a particular café, and the techniques and procedures used to conduct

the investigation. It is undisputed that this information and these records are in the nature of law-enforcement investigatory materials.

{¶ 33} The trial court nonetheless ordered the prosecuting attorney to produce the investigative reports compiled by undercover officers, e-mail exchanges between the prosecuting attorney's office and investigators, and answers to interrogatories requiring the disclosure of confidential information about ongoing criminal investigations.

{¶ 34} The prosecutor filed an interlocutory appeal from the order to produce. The appellate court affirmed in part and reversed in part, recognizing the existence of the law-enforcement investigatory privilege, but holding that the reports prepared during the undercover investigation of the Internet sweepstakes cafés were discoverable, because "[t]hese reports are directly relevant to the alleged conduct of the internet sweepstakes cafés involved in this case because any factual disputes regarding the nature of their business must necessarily be resolved prior to the ultimate resolution of the legal question at the heart of this declaratory judgment action." 2013-Ohio-4805, 4 N.E.3d 1063, ¶ 25 (8th Dist.). However, the appellate court determined that e-mails between the prosecuting attorney's office and criminal investigators were protected by the law-enforcement investigatory privilege and the attorney work-product privilege. It further directed the trial court to redact the names of the undercover officers when the reports were produced. Nonetheless, the court of appeals ordered the prosecuting attorney to answer interrogatories regarding witnesses and evidence the state intended to present at trial, despite its recognition that this could require identification of undercover officers.

{¶ 35} The prosecutor appealed to this court, and we accepted one proposition of law for review: "Records and information generated during the course of an open and ongoing undercover criminal investigation are not subject to disclosure based on the law enforcement investigatory privilege."

## The Law–Enforcement Investigatory Privilege

{¶ 36} Ohio has long recognized a qualified executive privilege for law-enforcement investigatory information, including confidential sources, surveillance information, and law-enforcement techniques and procedures. *E.g., State v. Beck,* 175 Ohio St. 73, 191 N.E.2d 825 (1963), *rev'd on other grounds by Beck v. Ohio,* 379 U.S. 89, 85 S.Ct. 223, 13 L.Ed.2d 142 (1964) (confidential informants); *State v. Williams,* 4 Ohio St.3d 74, 75, 446 N.E.2d 779 (1983) (same); *Henneman v. Toledo,* 35 Ohio St.3d 241, 520 N.E.2d 207 (records and information compiled by an internal affairs division of a police department); *State ex rel. Multimedia, Inc. v. Whalen,* 48 Ohio St.3d 41, 549 N.E.2d 167 (1990) (records related to an ongoing investigation); *State v. Brown,* 64 Ohio St.3d 649, 653, 597 N.E.2d 510 (1992) (confidential informants).

{¶ 37} Our decisions have applied a balancing test to determine whether a litigant's need for discovery of confidential law-enforcement information outweighs the public interest in its confidentiality. *Multimedia, Inc.* at 41; *Brown* at 653; *Henneman* at 246. But we have not yet specifically addressed the burden of proof of a civil litigant seeking to obtain confidential law-enforcement investigatory records related to an ongoing investigation. Although the majority borrows the "compelling need" standard from *In re New York City*, 607 F.3d 923 (2d Cir.2010), in my view, we should examine existing Ohio law.

{¶ 38} The confidential nature of a law-enforcement investigation is similar to the need for secrecy in a grand jury proceeding. And, in grand jury matters, there is a high standard for obtaining information that has been presented to a grand jury. As we explained in *State v. Hunter*, 131 Ohio St.3d 67, 2011-Ohio-6524, 960 N.E.2d 955, ¶ 141:

> "Grand jury proceedings are secret, and an accused is not entitled to inspect grand jury transcripts either before or during trial unless the ends of justice require it and there is a showing by the defense that a particularized need for disclosure exists which outweighs the need for secrecy." *State v. Greer* (1981), 66 Ohio St.2d 139, 20 O.O.3d 157, 420 N.E.2d 982, paragraph two of the syllabus. A particularized need is established "when the circumstances reveal a probability that the failure to provide the grand jury testimony will deny the defendant a fair trial." *State v. Sellards* (1985), 17 Ohio St.3d 169, 173, 17 OBR 410, 478 N.E.2d 781.

{¶ 39} The analogy is compelling.

{¶ 40} Because the witnesses who would be protected by the law-enforcement investigatory privilege are the same individuals who would be called to testify before a grand jury, and because of the confidential nature of law-enforcement investigations, the privilege is necessary to protect this information and these records from discovery.

{¶ 41} Thus, in my view, information protected by the law-enforcement investigatory privilege should be protected from disclosure in civil litigation unless the party seeking discovery demonstrates a particularized need for the information, that the ends of justice require disclosure to ensure a fair trial, and that the need for discovery outweighs the public interest in confidentiality. A trial court should determine, in an in camera proceeding, whether the litigant can demonstrate a particularized need for the material that outweighs the public interest in the confidentiality of that information.

{¶ 42} Here, the Cuyahoga County prosecutor has demonstrated that J & C Marketing is seeking discovery of information that is protected by the law-enforcement investigatory privilege.

{¶ 43} The burden therefore should have shifted to J & C Marketing to show that it has a particularized need for this privileged information, that disclosure is necessary to meet the ends of justice and ensure a fair trial, and that its interest in discovery outweighs the public interest in keeping confidential techniques, procedures, identities, and sources confidential. However, no showing had been made in the record before us that J & C Marketing has a need for the law-enforcement investigatory records and information sought in discovery to ensure a fair trial on the question regarding whether or not Internet sweepstakes constitute illegal gambling. The fact that Internet sweepstakes cafés have been investigated by police is not relevant to deciding whether they engage in illegal gambling. And to the extent that J & C Marketing seeks information regarding how its own cafés work in order to gauge their legality, that information is readily available from other sources, including its own employees and customers.

{¶ 44} In addition, an inference can be drawn that if J & C Marketing had a need for these documents and records, it would have filed a brief in this court. But it did not do so. And, significantly, J & C Marketing voluntarily dismissed its claim in case No. CV–12–784234, its declaratory judgment action, on January 9, 2014. Other Internet café owners who had intervened in this action have also dismissed their claims.

{¶ 45} Weighed against this minimal interest in disclosure is the prosecutor's significant interest in precluding release of information regarding confidential law-enforcement techniques, procedures, identities, and sources, which relate not only to ongoing criminal investigations involving this Internet sweepstakes café owner, but also to other cases not currently pending before the court. At the time of the discovery requests, the police investigations remained ongoing, and even now, the public retains a substantial interest in preserving the integrity of undercover operations and protecting the confidentiality and safety of undercover officers, informants, and witnesses.

{¶ 46} Although the court of appeals required redaction of the names of undercover agents, the investigatory reports nonetheless provide detailed information about the undercover investigations, and even if redacted, they still reveal the techniques and procedures used to conduct the undercover operations and potentially could lead to the disclosure of the identities of undercover officers and confidential sources. See *New York City*, 607 F.3d at 944 ("Pulling any individual 'thread' of an undercover operation may unravel the entire 'fabric' that could lead to identifying an undercover officer").

{¶ 47} Revealing confidential information has great potential to compromise ongoing and future investigations, and any need that J & C Marketing may have for its disclosure does not outweigh the public's interest in maintaining its confidentiality.

{¶ 48} Accordingly, I would reverse the judgment of the appellate court and prohibit discovery of any of the confidential law-enforcement investigatory materials sought in this case.

---

Timothy J. McGinty, Cuyahoga County Prosecuting Attorney, and Brian R. Gutkoski and Charles E. Hannan, Assistant Prosecuting Attorneys, for appellant.