[Cite as *Parra v. Jackson*, 2023-Ohio-216.]

# COURT OF APPEALS OF OHIO

# EIGHTH APPELLATE DISTRICT
# COUNTY OF CUYAHOGA

ANDREA PARRA,                           :

    Plaintiff-Appellee,         :

                                 No. 111295

    v.                              :

FRANK G. JACKSON, ET AL.,               :

    Defendants-Appellees.       :

[Appeal by Cuyahoga County Prosecutor's Office]

---

## JOURNAL ENTRY AND OPINION

**JUDGMENT:** AFFIRMED IN PART, REVERSED IN PART,
                  AND REMANDED
**RELEASED AND JOURNALIZED:** January 26, 2023

---

Civil Appeal from the Cuyahoga County Court of Common Pleas
Case No. CV-19-924682

---

### *Appearances:*

The Pattakos Law Firm LLC, and Peter Pattakos, *for appellee* Andrea Parra.

Michael C. O'Malley, Cuyahoga County Prosecuting Attorney, Nora E. Poore, Michael J. Stewart, and Anthony T. Miranda, Assistant Prosecuting Attorneys, *for appellant*.

LISA B. FORBES, J.:

{¶ 1}    Appellant Cuyahoga County Prosecutor's Office ("CCPO") appeals the trial court's decision denying in part its motion for a protective order. After a thorough in camera review of the documents in question, we affirm the trial court's order in part and reverse in part.

## I.  Facts and Procedural History

{¶ 2}    Following the murder of Antonio Parra ("Antonio"), his mother Andrea Parra ("Parra") filed a complaint against the former mayor of Cleveland Frank G. Jackson and the former Cleveland Chief of Police Calvin D. Williams alleging claims for wrongful death, intentional infliction of emotional distress, and obstruction of justice. Parra averred that "Mayor Jackson's and Chief Williams's intentional dereliction of their duties in covering up for gang-related crimes involving the Mayor's grandsons respectively caused, and exacerbated the damage arising from, [Antonio's] murder." Parra also claims that both defendants obstructed the investigation into Antonio's murder.

{¶ 3}    Parra served a subpoena on CCPO seeking production of various documents. Pertinent to this appeal, Parra requested the following:

> 3. All documents or things relating to the Parra Investigation, including the CCPO's complete file relating to the Investigation, and all official or unofficial notes, letters, emails, text messages, camera footage, or other recorded communications by any CCPO or other governmental official, employee, or agent relating thereto.
>
> * * *
>
> 5. All documents or things relating to the July 17, 2019 Incident, including the CCPO's complete file relating to the Incident, and all

official or unofficial notes, letters, emails, text messages, camera footage, or other recorded communications by any CCPO or other governmental official, employee, or agent relating thereto.

* * *

8. All documents or things relating to a report issued by the City of Cleveland's Fire Department concerning a vehicle that was found on fire on August 30, 2019, at 9217 Holton Avenue, Cleveland, Ohio 44101, including, without limitation, all related dash camera and body camera footage.

Request Nos. 3 and 8 relate to the investigation of Antonio's murder. Request No. 5 relates to an open juvenile delinquency case involving gang activity.

{¶ 4} CCPO objected to each of these requests asserting that the documents requested were protected from disclosure by the law enforcement investigatory privilege.

{¶ 5} Parra subsequently filed a motion to compel production of the documents sought in request Nos. 3, 5, and 8 of the subpoena to CCPO on July 2, 2021.[1] On July 9, 2021, CCPO filed a motion to quash the subpoena and a motion for a protective order asserting that request Nos. 3, 5, and 8 were not subject to production under the law enforcement investigatory privilege.[2]

---

[1] Parra's motion to compel also sought documents responsive to subpoena request No. 6, which sought documents related to the former mayor's grandson, Frank Q. Jackson. Frank Q. Jackson died on September 19, 2021. Several cases and investigations involving him were abated by his death. As a result, CCPO supplemented its production to Parra. The parties agree that request No. 6 is not at issue in this appeal.

[2] CCPO also asserted work-product privilege related to certain documents. The trial court ordered the work-product documents were not subject to production. Those documents are not at issue in this appeal.

{¶ 6} On September 6, 2021, the trial court ordered CCPO to "produce all of the documents in its possession that are responsive to Parra's subpoena requests numbered 3, 5, * * * and 8 for an in camera inspection by the court."

{¶ 7} After conducting an in camera review of the documents responsive to request Nos. 3, 5, and 8, the trial court granted in part and denied in part CCPO's motion for a protective order, ordering CCPO to produce various specific documents while concluding that others were protected. It is from this order that CCPO appeals.

## II. Law and Analysis

{¶ 8} CCPO raises the following two assignments of error that we will analyze together for ease of discussion:

> The trial court erred in ordering CCPO to provide the plaintiff in a civil case records relating to an open ongoing homicide investigation because the records are protected by the law-enforcement investigatory privilege.

> The trial court erred in ordering CCPO to provide the plaintiff in a civil case records relating to an open pending juvenile delinquency case because the records are protected by the law-enforcement investigatory privilege.

### A. Standard of Review

{¶ 9} "Appellate courts generally review a discovery dispute under an abuse-of-discretion standard, but if the dispute involves an alleged privilege, it is a question of law, subject to de novo review." *Friedenberg v. Friedenberg*, 161 Ohio St.3d 98, 2020-Ohio-3345, 161 N.E.3d 546, ¶ 22, citing *Ward v. Summa Health Sys.*, 128 Ohio St.3d 212, 2010-Ohio-6275, 943 N.E.2d 514, ¶ 13. Courts of appeals

across the state conduct a de novo review when the law enforcement investigative privilege is at issue. *See, e.g., J&C Marketing, L.L.C. v. McGinty*, 2013-Ohio-4805, 4 N.E.3d 1063, ¶ 9 (8th Dist.), *aff'd, J&C Marketing, L.L.C. v. McGinty*, 143 Ohio St.3d 315, 2015-Ohio-1310, 37 N.E.3d 1183; *Autumn Health Care of Zanesville, L.L.C. v. DeWine*, 10th Dist. Franklin No. 14AP-593, 2015-Ohio-2655, ¶ 12; *Nationwide Agribusiness Ins. Co. v. Heidler*, 12th Dist. Clinton Nos. CA2018-06-003, CA2018-07-004, CA2018-09-012, and CA2018-09-015, 2019-Ohio-4311, ¶ 39.

{¶ 10} Parra asserts that the correct standard of review is an abuse-of-discretion standard. We disagree. Here, the dispute relates to the alleged law enforcement investigatory privilege; therefore, we review de novo whether the documents the trial court ordered CCPO to produce are privileged.

## B. Law Enforcement Investigatory Privilege

{¶ 11} Civ.R. 26(B) states:

Parties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case * * *.

{¶ 12} "The common law recognizes a qualified privilege for law enforcement investigatory information, including confidential sources, surveillance information, and law-enforcement techniques and procedures." *J&C Marketing, L.L.C*, 143 Ohio St.3d 315, 2015-Ohio-1310, 37 N.E.3d 1183, at ¶ 17. "A strong presumption militates against lifting the privilege." *Id.* at ¶ 18, citing *Dinler v. New York (In re New York)*, 607 F.3d 923, 929 (2d Cir.2010). The privilege, however, must "'give way'" when the information is "'relevant and helpful to the defense of an

accused, or is essential to a fair determination of a cause * * *.'" *Id.* at ¶ 18, quoting *Roviaro v. United States*, 353 U.S. 53, 60-61, 77 S.Ct. 623, 1 L.Ed.2d 639 (1957).

{¶ 13} "[I]nformation related to a law-enforcement investigation is protected from disclosure in civil litigation unless the party seeking discovery demonstrates that it has a compelling need for the information and that that need outweighs the public's interest in keeping the information confidential." *J&C Marketing L.L.C.* at ¶ 22. In *Henneman v. Toledo*, 35 Ohio St.3d 241, 241, 520 N.E.2d 207 (1988), the Ohio Supreme Court adopted the ten-factor balancing test articulated in *Frankenhauser v. Rizzo*, 59 F.R.D. 339, 344 (E.D.Pa.1973), to analyze whether the requesting party's compelling need for the information outweighs the public's interest in protecting it. *See also J&C Marketing, L.L.C.*

{¶ 14} The *Frankenhauser* factors are:

(1) the extent to which disclosure will thwart governmental processes by discouraging citizens from giving the government information; (2) the impact upon persons who have given information of having their identities disclosed; (3) the degree to which governmental self-evaluation and consequent program improvement will be chilled by disclosure; (4) whether the information sought is factual data or evaluative summary; (5) whether the party seeking the discovery is an actual or potential defendant in any criminal proceeding either pending or reasonably likely to follow from the incident in question; (6) whether the police investigation has been completed; (7) whether any intradepartmental disciplinary proceedings have arisen or may arise from the investigation; (8) whether the plaintiff's suit is non-frivolous and brought in good faith; (9) whether the information sought is available through other discovery or from other sources; and (10) the importance of the information sought to the plaintiff's case.

*Frankenhauser* at 344.

{¶ 15} Before weighing the *Frankenhauser* factors, we note that the three disks provided to the trial court for in camera inspection contain thousands of documents, videos, audio files, and photographs. After conducting its in camera review, the trial court ordered production of thousands of pages of documents and other materials including the following: 911 calls; photos of suspects, crime scenes, and surveillance; social-media posts; video-surveillance footage; weapons test-fire results; criminal and juvenile delinquency histories; school records; phone extractions; search warrants; grand jury subpoenas; police notes and evaluations; police reports; HIPAA authorization forms; witness statements; rosters of gang members; "gang reports"; and emails.

{¶ 16} The materials the trial court ordered produced identify witnesses and persons of interest, and disclose police impressions and evaluations reflected in timelines, investigative summaries, and communication charts, among other information. Additionally, we note that there are discrepancies within the trial court's production order. For example, the trial court ordered CCPO to produce documents on Disk 1 Bates-stamped 976-983. However, it granted CCPO's request for a protective order regarding the very same documents found on Disk 2.

{¶ 17} After conducting our own in camera review, we turn to the *Frankenhauser* factors to determine whether Parra's need for the disputed information is compelling and outweighs the public's interest in keeping it confidential. The *Frankenhauser* factors will be analyzed out of order for ease of discussion.

{¶ 18} At the outset, we note that there is little case law in Ohio analyzing or applying the law enforcement investigatory privilege, none of which addresses facts similar to this case. However, in *Pinner v. Hartford Life & Acc. Co.*, S.D.Ind. No. 1:09-cv-00201-WTL-JMS, 2009 U.S. Dist. LEXIS 151039, 9 (Nov. 20, 2009), the Southern District of Indiana utilized the *Frankenhauser* factors when a plaintiff in a civil case requested the complete investigatory file for an open, ongoing homicide investigation.

{¶ 19} In *Pinner*, a life insurance company requested the police department's investigatory file related to the murder of one of its insureds, asserting that it needed the information to determine coverage because it suspected the insured was committing a felony at the time of his death that would preclude coverage under the policy. After weighing all ten of the factors, the *Pinner* Court determined that the public interest in keeping all of the documents at issue confidential outweighed the plaintiff's need. The court found that

> The nature of the crime and of the information presented for in camera review make even an attorneys'-eyes only protective order insufficient to guard against the potential harm that disclosure might entail, to cooperating witnesses and to the [police department's] overall investigation—particularly given [the plaintiff's] meager investigation.

*Pinner* at 9. We find *Pinner* helpful to our in camera review given the similar nature of the requested documents.

{¶ 20} We begin by analyzing the first two *Frankenhauser* factors together because they are closely related. These factors relate to witnesses, information they have given to law enforcement, and the impact that production of documents in a

civil case may have on both law enforcement and the witnesses. When analyzing these two factors in relation to documents subpoenaed from an open homicide investigation file, the *Pinner* Court found:

> When witnesses cooperate with law enforcement, they risk potential retaliation. Where, as here, the perpetrator is a violent individual, that risk may well be a substantial one. So long as [the] killer remains at large, disclosing witness identities and/or information traceable to particular witnesses would discourage future cooperation and would jeopardize the safety of those witnesses who have already cooperated with the police.

*Pinner* at 4. Here, the perpetrator of Antonio's murder has yet to be apprehended. As noted by the trial court, the documents responsive to Parra's requests disclose detailed information related to suspects involved in that violent crime, as well as gang members and gang activity. We find that, while the perpetrators of the violent crimes remain at large, the disclosure of witness identities or other information traceable to a witness could discourage witness cooperation in the future and jeopardize witness safety.

{¶ 21} Under the third and seventh factors, courts consider "the degree to which governmental self-evaluation and consequent program improvement will be chilled by disclosure" and whether the investigation relates to disciplinary proceedings. *Frankenhauser*, 59 F.R.D., at 344. CCPO concedes that the third and seventh factors do not apply to this case. CCPO stated that "this matter does not involve a government self-evaluation" and that "[t]he underlying records do not involve an intradepartmental disciplinary proceeding or disciplinary investigation."

We agree. None the documents requested by Parra relate to intradepartmental disciplinary proceedings or "governmental self-evaluation."

{¶ 22} The fourth factor considers whether the information requested is "factual data or evaluative summary." *Frankenhauser* at 344. When a civil litigant attempts "to free ride on [law enforcement's] investigatory legwork * * * its claim to discover even factual data" is "severely undercut[.]" *Pinner*, S.D.Ind. No. 1:09-cv-00201-WTL-JMS, 2009 U.S. Dist. LEXIS 151039, at 6. Our review of the documents at issue reveals that the disks contain both types of information. That a particular individual or fact is being scrutinized during an ongoing investigation is inextricably intertwined with CCPO's evaluation of information it is gathering, making it virtually impossible to separate factual from evaluative information. Even documents reflecting primarily factual data may reveal CCPO's evaluative or investigative strategies. Parra seeks all documents — both factual and evaluative — related to Antonio's ongoing murder investigation and to the pending juvenile delinquency case. Due to the interconnected and overlapping factual and evaluative nature of the information in the documents, to the extent it would even be possible, it would be a significant burden to separate evaluative summary from factual data.

{¶ 23} Next, we consider the fifth factor, whether Parra is or may become a potential criminal defendant with respect to the underlying investigation. Here, neither party argues that Parra is a possible suspect in either Antonio's homicide or the open juvenile delinquency case. Nothing in the record indicates that it is likely that she will become one in the future.

{¶ 24} In contrast to this case, in *J&C Marketing, L.L.C.*, 2013-Ohio-4805, 4 N.E.3d 1063, this court partially upheld a trial court's order that lifted the law enforcement investigatory privilege when the civil litigant requesting the documents was a potential criminal defendant. In that case, the civil litigants operated sweepstakes cafés that received cease-and-desist letters from CCPO claiming that the cafes were suspected of violating "several Ohio gambling laws" and that they must cease operation or face criminal prosecution. *Id*. at ¶ 2. In determining that the trial court correctly ordered disclosure of documents subpoenaed from CCPO, this court found that some of the factual information requested was "directly relevant to the alleged conduct of the internet sweepstakes cafés involved in this case because any factual disputes regarding the nature of their business must necessarily be resolved prior to the ultimate resolution of the legal question at the heart of this declaratory judgment action." *Id*. at ¶ 25. The Ohio Supreme Court affirmed this court's opinion, noting that in *J&C Marketing*, the civil plaintiffs' "interests in obtaining discovery [were] also strong, because by issuing the cease-and-desist letter, the prosecuting attorney in effect shut down [their] business, even though the business had never even been charged with violating the law." *J&C Marketing L.L.C.*, 143 Ohio St.3d 315, 2015-Ohio-1310, 37 N.E.3d 1183, at ¶ 20. Here, Parra's interest in proving her wrongful death, intentional infliction of emotional distress, and obstruction of justice claims does not carry with it the same need demonstrated by the *J&C Marketing* plaintiffs who were potential criminal defendants.

{¶ 25} The sixth factor instructs us to consider whether the police investigation has been completed. *Frankenhauser*, 59 F.R.D. at 344. As stated, both the investigation into Antonio's homicide and the juvenile delinquency case are open and ongoing. We note that CCPO has produced documents to Parra from its case files when the prosecutions have been completed or when investigations have closed. For example, when Frank Q. Jackson died, CCPO closed several of its investigations related to him and produced documents where the investigations were abated by his death.

{¶ 26} CCPO claims that the eighth factor, which considers whether the case is nonfrivolous and was brought in good faith, does not apply to the facts of this case. We disagree. CCPO states that "as a non-party to the underlying case [it] will not weigh into the debate as to whether Parra's complaint is frivolous or brought in bad faith" and argues that requiring a lawsuit to be "'non-frivolous' is a low bar." Nonetheless, whether Parra's case is nonfrivolous is one of the factors the Ohio Supreme Court instructs this court to consider. Nothing in the record indicates Parra's case is frivolous or was brought in bad faith.

{¶ 27} Under the ninth factor, the court reviews "whether the information sought is available through other discovery or from other sources." *Frankenhauser*, 59 F.R.D. at 344. Here the record reflects that a similar subpoena was issued to the Cleveland Police Department. Whether the police department produced documents was not part of the record. Furthermore, while the record reflects that Parra has issued written discovery requests to defendant Frank G. Jackson, the specifics of

those requests and whether any documents or written responses were produced is not part of the record before this court. The record is also silent as to whether any discovery was issued to Calvin Williams or whether any depositions have been taken. Thus, Parra has not demonstrated that she is unable to receive information elsewhere.

{¶ 28} Finally, the court must consider the importance of the information sought to this litigation. *Frankenhauser*, 59 F.R.D. at 344. CCPO asserts that the requested information is not important to Parra's claims because she "has failed to establish how the investigation records relate to" them. We agree. Parra's claims for wrongful death, intentional infliction of emotional distress, and obstruction of justice are based on her allegations that the former mayor obstructed the prosecution of his grandson for an assault of an 18-year-old and that both defendants interfered in the investigation of Antonio's murder. The substance of the entirety of CCPO's files, which include its investigative tactics, theories, evaluations, and processes, is not likely to lead to the discovery of admissible evidence related to Parra's claims.

{¶ 29} After conducting our independent in camera review of the documents requested by Parra, weighing all of the *Frankenhauser* factors, and acknowledging the strong presumption against lifting the privilege, we find that Parra has not established a compelling need for the requested documents that outweighs the public's interest in keeping the vast majority of them confidential. We find that the protective order in place is not strong enough to outweigh the public's interest in

keeping this information confidential. *See Pinner*, S.D.Ind. No. 1:09-cv-00201-WTL-JMS, 2009 U.S. Dist. LEXIS 151039, at 9 ("The nature of the crime and the information presented for in camera review make even an attorneys'-eyes-only-protective order insufficient * * *."). (Emphasis deleted.)

{¶ 30} However, we find that email communications between Parra's counsel and CCPO found at documents Bates-stamped 46-49, 51-52 from Disk A, the Parra Investigation Disk are factual in nature and nothing in the record suggests that they were used in the CCPO criminal investigations. Therefore, the public does not have an interest in keeping them confidential. These documents should be produced.

{¶ 31} Accordingly, CCPO's first assignment of error is sustained in part and overruled in part. CCPO's second assignment of error is sustained.

{¶ 32} Judgment affirmed in part and reversed in part. This matter is remanded to the trial court for proceedings consistent with this opinion.

It is ordered that appellant and appellee share costs herein taxed.

The court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate be sent to said court to carry this judgment into execution.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.

_____
LISA B. FORBES, JUDGE

FRANK DANIEL CELEBREZZE, III, P.J., and
MICHELLE J. SHEEHAN, J., CONCUR